**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ROBERT GALLAGHER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:15-CV-325-JPK |
| | ) | 2:15-CV-410-JPK |
| NADA PAJEVIC, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Robert Gallagher, acting without a lawyer, filed two complaints in this district against Defendant Nada Pajevic: Cause No. 2:15-cv-325 ("the 325 Case" or "the Defamation Complaint"); and Cause No. 2:15-cv-410 ("the 410 Case" or "the Tortious Infection Complaint"). Both cases are before this Court following an evidentiary hearing held to address whether there is federal court subject-matter jurisdiction over either complaint. The Court has jurisdiction to enter this opinion and order pursuant to 28 U.S.C. § 636(c).[1]

The issue at the evidentiary hearing was whether Gallagher was domiciled in Indiana or Illinois at the time these lawsuits were filed. The Court received documents into evidence, heard sworn testimony, and entertained the parties' legal arguments. In Part I of this Opinion and Order, the Court finds based on the entire record of both cases, including the testimony and evidence introduced at the hearing, that Gallagher was domiciled in Illinois when he filed these lawsuits, which means that diversity of citizenship is lacking because Pajevic also was domiciled in Illinois at that time. Accordingly, neither suit is one over which this Court has subject-matter jurisdiction. While this conclusion means that both cases must be dismissed without prejudice, the Court goes

---

[1] The cases were reassigned to the undersigned on January 7, 2019, and the parties thereafter entered their consent to all further proceedings before a United States Magistrate Judge, including the entry of a final judgment.

on in Part II of this Opinion and Order to consider whether to impose any restrictions against Gallagher regarding future complaints or legal actions he intends to initiate or file against Pajevic.

## BACKGROUND[2]

### A.    PLAINTIFF'S ALLEGATIONS

Gallagher filed the Defamation Complaint on August 31, 2015, and the Tortious Infection Complaint on November 5, 2015.[3] Both complaints allege that Gallagher and Pajevic were "friend[s]" for approximately ten years and that Gallagher "at times stayed at [Pajevic's] house in Illinois." [325 Case, DE 1 at 1; 410 Case, DE 4 at 1].

### 1.    THE 325 CASE

The Defamation Complaint alleges that at some point Pajevic "decided to disallow" Gallagher from staying at her residence while he was in Illinois, and that, before and after that, she and her two adult sons exhibited "emotional instability" and "outbursts of rage." [325 Case, DE 1 at 1]. Gallagher alleges that as a result of their conduct he decided "to completely estrange" himself from Pajevic, which led Pajevic and her sons "to make physical threats and threats of committing legal abuses" against him that were so "severe" he "had to call the police to make them stop." [*Id.* at 2]. Pajevic allegedly "became further enraged" because of Gallagher's "complete estrangement," and "attempted to file a petition for an order of protection" against him. [*Id.* at 3 (Count II, ¶ c)]. Based on these allegations, Gallagher pleads two counts of defamation and one count of intentional infliction of emotional distress.

---

[2] Record citations will be to the Docket Entries ("DE") in the "410 Case" or the "325 Case," as indicated, with page references to the numbers electronically assigned by the CM-ECF system at the top right corner of the page.

[3] The currently operative complaint in the 410 Case is the "Amended Complaint For Tortious Infection With Herpes," filed on December 22, 2015. *See* [410 Case, DE 4].

The complaint fails to set forth the substance of the allegedly defamatory statements "with sufficient precision and particularity so as to permit initial judicial review of [their] defamatory content." *Green v. Rogers*, 234 Ill. 2d 478, 492, 917 N.E.2d 450, 459 (2009).[4] As best the Court can tell from the complaint, the alleged defamation consists of two emails: (1) one in which Pajevic stated that Gallagher had stolen Pajevic's property [325 Case, DE 1 at 2 (a), (b)],[5] and (2) the other in which Pajevic stated that she had a video of Gallagher damaging her car door [*id.* at 3(d), (e)]. Given the lack of clarity as to how these alleged emails were defamatory,[6] the Court ordered Gallagher to supplement the record with the allegedly defamatory statements.[7] Gallagher's two

---

[4] The court previously applied Indiana law to Gallagher's defamation claims based on the complaint's allegations that Gallagher resides in Indiana and that Pajevic's conduct at issue occurred "in" Indiana. *See* [325 Case, DE 41 at 4]. As discussed in this Opinion and Order, however, the evidence shows that Gallagher more than likely lives in Illinois and that all of Pajevic's actions in question occurred there as well. Accordingly, Illinois rather than Indiana law is most likely the correct choice of law. (And beyond that, Illinois, not Indiana, is likely the proper venue for both cases, *see* 28 U.S.C. § 1391(b)(2), although Pajevic never moved to dismiss or transfer the case for improper venue.) In any event, Indiana and Illinois defamation law appear to be similar. *See Ali v. All. Home Health Care, LLC,* 53 N.E.3d 420, 428 (Ind. Ct. App. 2016) (finding that complaint "lack[ed] the specificity necessary to state a claim for defamation" where it did "not specifically identify the statements alleged to have been made …[or] specify the persons to whom (or in front of whom) the alleged defamatory statements were published").

[5] The property in question was office equipment allegedly belonging to Pajevic's employer, AT&T. Gallagher does not dispute that he took the office equipment from Pajevic's house without her permission. Instead, he claims he contacted AT&T to report that Pajevic had stolen the equipment, and some unidentified person at AT&T told him that he could take the equipment and return it to AT&T. *See* [325 Case, DE 1 at 2 (Count I, ¶ a); *see also id.*, DE 93 at 1; Tr. Dec. 14, 2021 at 21-22 (325 Case, DE 94; 410 Case, DE 110)].

[6] Defamation is "defined as holding a person up to ridicule, scorn or contempt," *Tacket v. Delco Remy Div. of Gen. Motors Corp*., 937 F.2d 1201, 1204 (7th Cir. 1991). To state a claim for defamation, a plaintiff generally must allege "facts showing that [the] defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green*, 234 Ill. 2d at 491, 917 N.E.2d at 459.

[7] "A preliminary determination of whether the statements are actionable is a question of law [for the court]." *Action Repair, Inc. v. Am. Broadcasting Cos.,* 776 F.2d 143, 145 (7th Cir. 1985). And where, as in the case of the Defamation Complaint, the court authorized suit to proceed without

3

defamation counts are titled "Libel" and he specifically refers to emails, so the Court's order was for Gallagher to file a copy of the emails at issue.[8] But Gallagher responded to the order by filing a statement that merely repeated the allegations in the complaint. *See* [*id.*, DE 93]. Three months later, however, Gallagher sua sponte filed a copy of "the email from [Pajevic] as related to the issue of defamation." [*Id.*, DE 98 at 1]. In the email, Pajevic states that she has surveillance camera footage showing Gallagher "wrecking and damaging" her car door. [*Id.* at 2].[9] Assuming Pajevic's statements in the email could be considered "defamatory,"[10] the email shows that it was sent only

---

prepayment of fees, the court *must* dismiss the complaint if "at any time" it appears the allegations do not state a legal claim for relief. 28 U.S.C. § 1915(a)(1), (e)(2)(B).

[8] Defamation "is comprised of two related torts: libel and slander," with libel referring to defamatory statements in writing and slander referring to oral or verbal defamatory statements. *Tackett*, 937 F.2d at 1204.

[9] The second email alleged in the complaint, which purportedly accused Gallagher of stealing Pajevic's property, has never been produced. The Court therefore assumes it does not exist, and that Pajevic made that allegedly defamatory statement either in court documents and/or verbally during court proceedings, as alleged elsewhere in the Defamation Complaint. *See* [325 Case, DE 1 at 3 (Count II, ¶ d) ("The defendant filed a false claim in a small claims court falsely alleging that the plaintiff had possession of her property.")]. But those statements cannot form the basis of a defamation claim because the law provides "an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements." *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 376 (7th Cir. 2010) (quoting *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008)); *see also Atturo Tire Corp. v. Toyo Tire Corp.*, No. 14-CV-0206, 2022 WL 1470362, at *3 (N.D. Ill. May 10, 2022) (same, applying Illinois law). The same principle precludes a defamation claim based on the allegations in the complaint that Pajevic falsely stated or implied in domestic court proceedings that she was "living in fear of" Gallagher, and that Gallagher was "stalking" her. *See* [325 Case, DE 1 at 3 (Count II, ¶¶ e, f)].

[10] To qualify as being defamatory per se, the statement would have to fall into one of the categories for which reputational harm need not be shown because it is presumed. The only per se category potentially applicable to the email is "words that impute a person has committed a crime." *Green*, 234 Ill. 2d at 491, 917 N.E.2d at 459. But to qualify for this category of per se defamation, the statement "must directly or expressly accuse the plaintiff[] of committing a specific crime." *Osumdairo v. Glandian*, 591 F. Supp. 3d 353, 361 (N.D. Ill. 2022). The "use of a term which has a broader, noncriminal meaning" (i.e., "wrecking" or "damaging") typically would be insufficient. *Kapotas v. Better Gov't Ass'n*, 2015 IL App (1st) 140534, ¶ 51, 30 N.E.3d 572, 590. Moreover, even if Pajevic's email could be construed as imputing the commission of a crime, it still would not be defamatory per se unless the crime in question was "an indictable one, involving moral

to Gallagher, and there are no further allegations in the complaint to plausibly suggest it was ever published to a third party. *See Kapotas*, 2015 IL App (1st) 140534, ¶¶ 50-52, 30 N.E.3d at 590 (dismissing defamation complaint that "contain[ed] only a conclusory allegation that the defamatory statements were 'published' without stating to whom, when, and how that publication occurred").

### 2.    410 CASE

In the Tortious Infection Complaint, Gallagher alleges that Pajevic falsely told him she had no sexually transmittable diseases, and that she "then knowingly transmitted the genital herpes disease along with genital warts" to him. [410 Case, DE 4 ¶ 3]. Gallagher alleges that, after he "became infected he discovered that [Pajevic] had previously seen a doctor and was prescribed a specially controlled prescription drug for the treatment of herpes." [*Id.*]. Based on these alleged facts, Gallagher asserts claims for battery, negligence, fraudulent misrepresentation, and intentional infliction of emotional distress. [*Id.* (Counts I-IV)].

Although the Tortious Infection Complaint does not specifically allege that Gallagher was diagnosed with genital herpes, one might reasonably assume that he would not have brought suit for tortious infection with a sexually transmitted *disease* unless he had been. Unbeknownst to the Court until much later in the proceedings, however, Gallagher has never received a medical diagnosis of genital herpes.[11] Moreover, Gallagher affirmatively asserts that he has no intention of

---

turpitude and punishable by death or imprisonment rather than by fine." *Jacobson v. Gimbel*, 2013 IL App (2d) 120478, ¶ 27, 986 N.E.2d 1262, 1271. If the statement does not qualify as being per se defamatory, Gallagher would have to allege specific facts from which actual damage to his reputation could plausibly be inferred, which he has not and likely could not do.

[11] *See* [Tr. Dec. 14, 2021 at 4:10-13 (325 Case, DE 94; 410 Case, DE 110) ("Q. (Court): And when were you diagnosed with [an] STD?" A. (Gallagher): I wasn't. Q. (Court): You never have been? A. (Gallagher): No."); *id.* at 5:17-22 (Q. (Court): "… I want to make sure that I understand you.

ever seeking one,[12] apparently on the theory that a diagnosis is "[un]necessary" because Pajevic supposedly "admitted that she's had [an] STD [sexually transmitted disease]."[13] But even if Pajevic did admit to having an STD,[14] that admission would not resolve the question of whether *Gallagher* suffers from the disease, an obvious prerequisite to his lawsuit. And while Gallagher testified he has suffered in the past from sores on his genitals, that testimony is not factual support for his assertion that he suffers from the disease of genital herpes because Gallagher is not competent to self-diagnose the medical cause of his genital sores. That somewhat self-evident proposition is also amply supported in the case law. *See In re Testosterone Replacement Therapy*

---

Have you ever been to a doctor who diagnosed you as having any type of an STD?" A. (Gallagher): No.")].

[12] *See* [Tr. Dec. 14, 2021 at 7:21-22 (325 Case, DE 94; 410 Case, DE 110) ("Q. (Court): And you haven't been tested. A. (Gallagher): Correct. And I won't get tested[.]")].

[13] *See* [Tr. Dec. 14, 2021 at 7:23-24 (325 Case, DE 94; 410 Case, DE 110)].

[14] In her summary judgment filing, Pajevic states unequivocally: "I do not have genital herpes"; "I have never contracted genital herpes"; and "I do not have any sexually transmitted diseases." [410 Case, DE 102-1 ¶¶ 13-14, 19]. Gallagher, however, is relying on testimony Pajevic gave four and a half years earlier when she was unrepresented by counsel. *See* [Tr. Dec. 13, 2017 at 23:9-12 (410 Case, DE 122) (Q. (Court): When was it in the timeline of this relationship that you told him you have genital herpes?"; A. (Pajevic): "It was in the beginning of our relationship when he saw that I was taking medication for it.")]. While Pajevic answered the court's question as it was posed, just before that testimony she had testified that she has had "herpes simplex" her "whole life" [Tr. Dec. 13, 2017 at 20:11-12 (410 Case, DE 122); *see also id.* at 27:14-17], and immediately afterwards, she testified that her symptoms involved outbreaks of cold sores on her lips [*id.* at 23:17-23]. Her answer to the court's question was about timing not symptoms, so she might have been referring to when she told Gallagher that she had herpes simplex (as opposed to genital herpes, as the question was posed by the court). The Court is not making any factual finding on the issue but only pointing out that Pajevic's testimony at the earlier hearing is ambiguous regarding whether she has ever had *genital* herpes, an issue that likely would require medical evidence to resolve one way or another. *See, e.g., Doe v. Roe,* 362 Ga. App. 23, 27, 864 S.E.2d 206, 213 (2021) ("While both Doe and Roe deposed that they each tested positive for HSV-1 [Herpes Simplex Virus, Type I] after Doe's outbreak, Doe has cited no medical evidence showing that a positive test for that virus necessarily means that a person has genital herpes."). In any event, resolving this factual dispute is unnecessary if there is no medical evidence in the record that Gallagher himself has the disease of genital herpes, as discussed above.

*Prod. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2018 WL 2095701, at *6 (N.D. Ill. May 5, 2018) ("[Plaintiff] is not a doctor and cannot appropriately provide self-diagnosis testimony."); *Smith v. Garcia*, No. 15-CV-10105, 2018 WL 461230, at *8 (N.D. Ill. Jan. 18, 2018) ("Plaintiff will not be allowed to (1) provide a medical diagnosis of her injuries, or (2) testify that the alleged beating proximately caused her medical problems, because this goes beyond lay testimony based on Plaintiff's rational perceptions.").[15] As one court has said, "[t]he unfairness of subjecting defendants to … torts liability based on subjective self-diagnosis," rather than "scientific or otherwise reliable validation[,] is readily apparent." *Gabbard v. Linn-Benton Hous. Auth.*, 219 F. Supp. 2d 1130, 1141 (D. Or. 2002). In short, without a physician's diagnosis, Gallagher's tortious infection claim against Pajevic has "no more evidentiary support than the case against [jock itch]." *Id.*[16]

---

[15] *See also Gault v. United States,* No. CV 20-10687 PA (PVC), 2022 WL 14177074, at *12 (C.D. Cal. Sept. 26, 2022) (upholding objection that the plaintiff "cannot present as a fact a medical finding or self-diagnosis he is not qualified to make"), *report and recommendation adopted*, No. CV 20-10687 PA (PVC), 2022 WL 14317642 (C.D. Cal. Oct. 22, 2022); *Doe*, 362 Ga. App. at 27, 864 S.E.2d at 213 (in suit to recover for tortious infection with genital herpes, court holds that "medical questions regarding how and when each of [the parties] contracted the virus, diagnoses as to their medical conditions, and whether Roe's conduct caused Doe's alleged injury can be answered accurately only by witnesses with specialized expert knowledge" (internal quotation marks and citation omitted)); *Lige v. Clark Cnty.,* No. 2:16-cv-603-JAD-PAL, 2019 WL 13255320, at *3 (D. Nev. Apr. 17, 2019) (holding that, while the plaintiff "can speak to his experience of pain or physical distress," he "cannot diagnose himself with any medical condition …, nor can he offer the opinion that any medical condition was caused by the defendants"); *Kunze v. Diehl,* 345 F. Supp. 2d 1031, 1035–36 (D.N.D. 2004) (holding that, "[a]t a minimum, [the plaintiff] has an affirmative burden to show there is a genuine issue for trial based upon reliable, verified medical evidence and not simply a self-diagnosis").

[16] According to Gallagher, he does not need a medical diagnosis because having genital herpes is like having "a cold or a flu, not very many people go to the doctor for that. They just deal with it the best they can." [410 Case, DE 110, Tr. Dec. 14, 2021 at 5:10-16]. That may be true, but Gallagher is doing more than just "deal[ing] with it." He has sued another person for tortiously transmitting a disease. And the law requires a good faith basis *before* suit is filed for factual allegations such as Gallagher's allegation that he suffers from a specific medical condition. *See* Fed. R. Civ. P. 11(b)(3).

**B.    DEFENDANT'S ALLEGATIONS**[17]

Pajevic alleged in her Answer[18] that Gallagher filed these two lawsuits in retaliation for Pajevic having ended her relationship with him in January 2015 and then evicting him from her home in Romeoville, Illinois. As proof of the eviction, Pajevic attached a copy of a "Forcible Entry and Detainer Order" entered by an Illinois state court. *See* [325 Case, DE 12 at 18-19].[19] Pajevic also stated that an Illinois domestic court issued an order of protection against Gallagher, and she attached a copy of that order [*id.* at 4-16], showing that Gallagher and Pajevic were both represented by counsel [*id.* at 6] and that the Illinois domestic court found "a pattern of harassment" by Gallagher against Pajevic [*id.* at 13].[20]

---

[17] Gallagher has argued that Pajevic's allegations are false and irrelevant. *See* [410 Case, DE 44]. As the Court previously stated, however, "[t]he parties have different opinions on the events giving rise to this litigation and regarding their own motivations for actions taken. Gallagher was able to present his allegations in his complaint, and Pajevic is permitted to bring her side of the story in her answer." [*Id.*, DE 58 at 3-4].

[18] All of the exhibits submitted by Pajevic with her filings—whether attached to the original Answer (in the record of the 325 Case only) or the refiled Answer (in the record of the 410 Case only), will be considered by the Court for purposes of both cases. *See, e.g., Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (per curiam) ("Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned."); *In re KJK Constr. Co.*, 414 B.R. 416, 430 (Bankr. N.D. Ill. 2009) ("This Court's own records are the proper subject of judicial notice." (citing cases)).

[19] The Court takes judicial notice of the state court documents. *See, e.g., Spiegel v. Kim,* 952 F.3d 844, 847 (7th Cir. 2020) ("A court may take judicial notice of public records such as the state court documents [the defendant] attached [to her appellate brief].""); *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) ("orders entered by a state court …. are public records and appropriate subjects of judicial notice"). Gallagher asserted in a "reply" to Pajevic's refiled Answer in the 410 Case (which did not have the eviction order attached) that "[Pajevic] [does not] have any court orders of eviction to support that statement [concerning having to evict Gallagher from her Romeoville home]." [410 Case, DE 44 at 7]. But Gallagher knew when he made that statement that the eviction order existed, and in fact the order was in the record, having been previously attached to Pajevic's original answer in both cases.

[20] The Court may take note of the findings of the state courts as shown in judicially noticed state court documents. *See Spiegel,* 952 F.3d at 847 ("Having taken judicial notice of the orders, it is

Pajevic further stated in her Answer that, in retaliation for the Illinois eviction and protection order proceedings, Gallagher brought a petition in Indiana state court seeking a protection order against her. He then filed a federal lawsuit in Illinois naming as defendants both her and the Illinois state court judge who granted the protection order. Pajevic attached court documents to her Answer as proof of these proceedings as well. Those documents show that: (1) the Indiana domestic proceeding was dismissed on the finding of the Indiana state court that Gallagher had not submitted sufficient evidence to justify issuance of a protection order against Pajevic [*id.* at 2]; and (2) the Illinois federal lawsuit was dismissed sua sponte by the district pursuant to 8 U.S.C. § 1915(e)(2)(B) for failure to state a claim for relief. *See* [*id.* at 17; 410 Case, DE 41 at 15].[21]

## C.    PROCEDURAL HISTORY RELATING TO JURISDICTIONAL ISSUES

### 1.    GALLAGHER'S JURISDICTIONAL ALLEGATIONS

The Defamation Complaint and the Tortious Infection Complaint both allege federal court jurisdiction under the diversity statute, 28 U.S.C. § 1332, further alleging that the amount in

---

not lost on us that the state court rejected all of Spiegel's claims and reprimanded him for frivolous filings.").

[21] Gallagher had claimed in the complaint in the Illinois federal lawsuit that he is "a Human Rights Defender working on behalf of the United Nations," and that the state court judge who entered the domestic protection order "knowingly and willingly use[d] her domestic family court for the sole purpose of harass[ing]" Gallagher while he was engaging in his investigative and reporting duties on behalf of the United Nations. *See* [410 Case, DE 41 at 18, 20 (*Gallagher v. Pajevic*, No. 15-cv-6642, Cmplt., Dkt. #1 at 1, 3 (N.D. Ill. July 29, 2015))]. In dismissing Gallagher's complaint prior to service on the defendants, Chief Judge Rebecca Pallmeyer of the Northern District of Illinois observed that Gallagher's claims about being a Human Rights Defender working on behalf of the United Nations were "unlikely," but that in any event they made "no difference" because the state court judge was immune from suit and the appropriate remedy if Gallagher believed Pajevic was not entitled to the relief that had been ordered by the state court judge was an appeal in state court. [*Id.* at 15]. Gallagher has made similar assertions regarding his "work[ ]" as a "Human Rights Defender … on behalf of the United Nations" in these proceedings. *See* [410 Case, DE 44 at 3]. The Court finds these assertions irrelevant to any issue in these cases, and thus disregards them.

controversy exceeds the jurisdictional minimum and that Gallagher is a "long time resident" of Indiana while Pajevic is a "long time resident" of Illinois. Gallagher gives his address as 2001 E. Main Street, Griffith, Indiana 46319 (hereinafter the Griffith address or house), while it is undisputed that Pajevic's address is 613 Glenhurst Court, Romeoville, Illinois (hereinafter the Romeoville address or house).

     2.    **PAJEVIC'S JURISDICTIONAL ALLEGATIONS**

In her Answer, Pajevic denied that Gallagher was being truthful about where he lives. Pajevic stated among other things that:

> Mr. Gallagher is NOT a long-time resident of Indiana and has NO permanent domicile/resident [sic] at his brother Dennis Gallagher's resident [sic] (2001 East Main Street, Griffith, Indiana, 46319). He only uses his brother's address to receive official mail but has NO residency in Indiana. Mr. Gallagher uses the alleged Indiana address to reduce the costs of vehicle registration and license plate fees. He was homeless when we met in November 2003; occasionally working but mainly unemployed in Illinois and living in my home and/or in a garage in Warrenville, Illinois. I had a court document sent to him at 2001 East Main Street, Griffith, Indiana, 46319 that was marked as "return to sender/addressee unknown" post marked April 29, 2015 (see attached exhibit A). This is his brother Dennis Gallagher's residence. His brother has never allowed him to live there. He taped a notice of falsification of service on the front door of my home making it appear to look like an authentic court document stating Robert Gallagher does not live at 2001 E. Main Street, Griffith IN forging his brother Dennis Gallagher's signature on 5/3/15 (see attached Exhibit B). Plaintiff has provided no proof or evidence (i.e., mortgage statement, rent receipt, utility bill, etc.) that he is domiciled in Griffith Indiana, therefore, this case does not belong in federal court due to lack of diversity jurisdiction of both parties.
>
> …. The plaintiff, Robert Gallagher, was commonly known by all as Kevin Gallagher. He was not just a friend of the defendant. He was a steady boyfriend residing in my home for long periods of time. When we broke up on numerous occasions he stayed at rented garages in both Warrenville and Batavia Illinois but never in Indiana.

[410 Case, DE 41, ¶¶ 1-2].[22]

One of the exhibits Pajevic attached to her Answer was a copy of the document referenced as the "Notice of Falsification of Service," and the envelope that was returned to her with the "Notice" after she attempted to serve Gallagher with papers in the Illinois protection order proceeding using the Griffith, Indiana address. Gallagher's name and the Griffith address are crossed off on the envelope and the notation "Return to Sender/Addressee Unknown" is handwritten below Pajevic's return address. The envelope and "Notice of Falsification of Service" are reproduced below:



[325 Case, DE 12 at 21; 410 Case, DE 41 at 11].

---

[22] *See also* [325 Case, DE 12 at 1 ("[Gallagher] does not have any residency in Indiana. He has lied by using false Indiana addresses (belonging to his brothers), including the attached proof of notice of falsification of service and returned envelope. He has been living continuously in Illinois for well over 16 years but falsely uses his family addresses in Indiana. He has been seen 1 mile from my work address in Lisle just over a week ago by my daughter's roommate.")].

STATE OF ILLINOIS )
                 )SS
COUNTY OF WILL    )
      IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
      WILL COUNTY, ILLINOIS 14 W JEFFERSON ST JOLIET ILL. 60432 ROOM 212
NADA PAJEVIC, PLAINTIFF
      VS                     Case Number 2015 OP 000654
ROBERT GALLAGHER, DEFENDANT

### NOTICE OF FALSIFICATION OF SERVICE

Now comes D. Gallagher located at 2001 E Main St.  in Griffith Indiana, and here by states that a
"summons to appear" was delivered by the Lake county sheriff for Mr. Robert Gallagher, at this
address listed above, on two occasions.

PLEASE BE ADVISED that Mr. Robert Gallagher does not live at this location **nor** does he live
at the other location listed at 1450 Joliet St. in Dyer Ind. I do not know of his current address,
and **no one has notified him of these proceedings, nor will I in the future.**

Plaintiff is to be advised that providing the courts with false locations is a criminal offense.

I wish not to be harassed by the plaintiff and demand that she cease and desist contacting me or
sending mail, regardless of who the mail is addressed to.

Plaintiff is so advised that any court proceedings held without the knowledge of the defendant,
not so served in accordance with current law, will nullify any legal proceedings or court orders,
and subject the plaintiff to costly counter suits.

_D. Gallagher_

D. Gallagher 2001 E. Main St Griffith Ind.

[325 Case, DE 12 at 20; 410 Case, DE 41 at 7].

Pajevic also attached to her Answer a copy of an "Emergency Motion" that had been filed

by an attorney who was representing Gallagher in the Illinois protection order proceeding. [410

Case, DE 41 at 9]. The motion was filed sometime between May 4, 2015 (date of interim order of

protection) and June 17, 2015 (date of final order of protection). The attorney argued in the motion

that the interim protection order should be vacated because Pajevic failed to properly serve

Gallagher with notice of the proceeding, citing to the "Notice of Falsification of Service" as

evidence that Pajevic "attempted to have [Gallagher] served at his brother's address *where [he]*

*does not reside."* [*Id.* (emphasis added)]. The attorney further argued that Pajevic "has also

attempted to have [Gallagher] served at an address where [he] merely rents storage space and does

not reside" and that "[t]his is well known to" Pajevic. [*Id.*].

Pajevic explains that the second service attempt referenced by Gallagher's attorney is

evidenced by another document also titled "Notice of Falsification of Service," which was

supposedly written by a person named "Adam Clement," who Pajevic states is the name of Gallagher's landlord for his rented garage in Batavia, Illinois. As shown below, the second notice is suspiciously similar to the earlier one that was supposedly written and signed by Gallagher's brother, Dennis:

STATE OF ILLINOIS )
                  )SS
COUNTY OF WILL   )
            IN THE CIRCUIT COURT OF THE TWELTH JUDICIAL CIRCUIT
        WILL COUNTY, ILLINOIS 14 W JEFFERSON ST JOLIET ILL. 60432 ROOM 212
ADAM CLEMENS PLAINTIFF
     VS                          REFERENCE TO Case Number 2015 OP 000654
NADA PAJEVIC, DEFENDANT
           NOTICE OF ATTEMPTED FALSIFICATION OF SERVICE
NOW COMES ADAM CLEMENS, located at 601 Ridgelawn Trail in Batavia, Illinois, and hereby states that the Kane county sheriff attempted to serve a "summons to appear" for Mr. Robert Gallagher, at this address listed above, on one occasion.

PLEASE BE ADVISED that Mr. Robert Gallagher does not live at this location. I do not know of his current address.

The posting of notes on his behalf is strictly prohibited. Even if posted by the police or Sherriff.

Sending anyone to my address on his behalf, (even if it is the police) is prohibited and is considered harassment.

YOU ARE FORBIDDEN TO BE ON MY PROPERTY.

DO NOT SEND MAIL TO THIS ADDRESS.

DO NOT SEND ANYONE TO THIS ADDRESS ON YOUR BEHALF, OR MR. GALLAGHER'S BEHALF.

DO NOT CALL, OR TEXT, OR EMAIL ME.

Failure to abide by these orders will result in a legal counter action against you in the US Courts for harassment.

Nada Pajevic is to be advised that providing the courts with false locations is a criminal offense.

13

I wish not to be harassed by the Nada Pajevic, or anyone on her behalf, and demand that she cease and desist contacting me in any way, or sending others on her behalf, regardless of an attempt to serve an order of protection .

Plaintiff is so advised that any court proceedings under such circumstances will nullify her legal proceedings or court orders, and subject the her to costly civil actions.

_____

Mr. Adam Clemens
601 Ridgelawn Trail Batavia, Illinois.

STATE OF ILLINOIS )
                          )SS
COUNTY OF WILL    )

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT

WILL COUNTY, ILLINOIS 14 W JEFFERSON ST JOLIET ILL. 60432 ROOM 212

NADA PAJEVIC, PLAINTIFF

VS                                          Case Number 2015 OP 000654

ROBERT GALLAGHER, DEFENDANT

PROOF OF SERVICE

I, Adam Clemens, do hereby state, that I had delivered a Noticeof  Attempted Falsification of Service  to the clerk of the circuit court for the 12th district at 14 W Jefferson St. room 212 in Joliet, Il. that the service of Summons was not delivered to the defendant, as falsely stated, and mailed said same to the plaintiff, Nada Pajevic, at 613 Glenhurst Court in Romeoville, IL. 60446, by having said same delivered and deposited with the US Post Office in Batavia,  Illinois on Tuesday 5-12-15.

Mr. Adam Clemens
601 Ridgelawn Trail, Batavia, Illinois.

[*Id.* at 13-14].

### 3.    FURTHER JURISDICTIONAL INQUIRIES IN THE 410 CASE[23]

After Pajevic appeared in the 410 Case and filed her original Answer in which she challenged Gallagher's jurisdictional allegations, the Court issued an order directing Gallagher to file a supplemental statement addressing the issues of domicile and the amount in controversy. [*Id.*, DE 31]. The order for a supplemental jurisdictional statement was mailed to Gallagher at the Griffith, Indiana address, but Gallagher failed to respond by the stated deadline. The Court issued a second order sua sponte extending the deadline and notifying the parties that the court might also address the jurisdictional issue during an upcoming in-person hearing that had been scheduled to

---

[23] The 325 Case was dormant while these proceedings were happening, having been dismissed on February 16, 2017 for failure to prosecute. It was later reinstated, but that did not occur until March 26, 2018. *See* [325 Case, DE 17-21].

resolve a motion for default judgment filed by Gallagher due to Pajevic having missed the deadline for filing a response to the complaint.

On November 29, 2017, Gallagher filed a supplemental jurisdictional statement stating that he "is domiciled, or resides" at the Griffith address, that he "has been domiciled in Indiana for many decades," and that he "considers the state of Indiana as his permanent home." [*Id.*, DE 37 at 1]. Gallagher attached a copy of an Indiana driver's license, which shows an issue date of November 6, 2015. [*Id.,* DE 37-4 at 2]. As to the amount in controversy, Gallagher stated that the medication typically prescribed for herpes (Valtrex) costs either $730.99 or $336.99 per month (depending on the formulation), which adds up to either $263,160 or $121,320 over thirty years. [*Id.,* DE 37 at 3]. Gallagher attached a print-out and receipt showing a "cash price" of $730.99 for a month's supply of the non-generic Valtrex from a Walgreens located in Lemont, Illinois, which does not show that Gallagher actually purchased the drug. [*Id.* at 4]. Gallagher also submitted an affidavit (sworn before an Illinois notary public), in which he stated that the Griffith address was his permanent residence and domicile, and that the Walgreens receipt reflected an accurate price estimate for a thirty-day supply of Valtrex. [*Id.,* DE 37-1].

Following Gallagher's filing, the Court held a hearing on December 13, 2017. Although the hearing was called to address Gallagher's motion for default judgment,[24] the parties also testified under oath to facts relevant to the jurisdictional question. Specifically, Pajevic testified that: (1) Gallagher had not lived in Indiana for over thirty years since his divorce [Tr. Dec. 13, 2017 at 5:9-10 (410 Case, DE 122)]; (2) Gallagher uses "two different Social Security numbers with the same birth date and two different names, Kevin Robert Gallagher and Robert Kevin

---

[24] The Court ultimately entered a report and recommendation in favor of Pajevic on Gallagher's motion for default judgment, which was later adopted by the presiding district judge.

15

Gallagher" [*id.* at 6:1-3]; (3) 2001 East Main Street is the address of Gallagher's brother, Dennis, but Gallagher has "never lived there" [*id.* at 6:9-11]; and (4) Gallagher has another brother who lives in Dyer, Indiana, but Gallagher has never lived with him either; "he's basically been homeless for the majority of the time" she has known him, either living with her at the Romeoville address or in a rented garage [*id.* at 7:18-21].

Following this testimony, the Court asked Gallagher whether he and Pajevic ever lived together. Gallagher responded, "Well, that's debatable . . . [t]here were times I would spend four, 5 days there …. But, no, I was always domiciled in Indiana." [*Id.* at 10:9-13]. As a follow-up, the Court asked Pajevic: "[D]uring that period of time that you had this relationship, sometimes he [Gallagher] stayed overnight at your house and apparently quite a bit did not; is that right[?]." [*Id.* at 23:1-3]. Pajevic responded: "He actually … lived with me. [The house in Romeoville, Illinois] was …. his permanent residence for probably 10 years out of the 12 years. … I have mail here with his name and my address on it[.]" [*Id.* at 23:4-8]. The issue was not pursued any further at this time.

### 4.    FURTHER JURISDICTIONAL INQUIRIES IN THE 325 CASE

The 325 Case was reinstated on March 26, 2018, and, on May 22, 2018, Gallagher was ordered to appear at a telephonic status conference to take place on June 7, 2018. A copy of the text entry order setting the status conference was mailed to Gallagher at the Griffith address on file. *See* [325 Case, DE 22]. Gallagher did not appear for the conference, so the Court entered an order referring the case to the district judge for a possible second dismissal for failure to prosecute. [*Id.*, DE 23]. On June 25, 2018, Gallagher responded to the Court's order in a filing that stated he did not receive notice of the status conference because he "was at work out of town for the entire

time that this Court moved for a telephone conference." [*Id.*, DE 24 at 1].[25] No further court action was taken against Gallagher for his failure to appear. But on July 24, 2018, the Court entered an order noting Pajevic's factual allegations in her Answer calling into question the court's jurisdiction, and directing Gallagher to support his allegations of citizenship and the amount in controversy "with competent proof." [*Id.*, DE 29 at 6-7].

On August 13, 2018, Gallagher filed a document in which he repeatedly stated that the amount he sought in damages in the 325 Case was "only" $75,000. [*Id.,* DE 31 at 1, 6, 7; *see also id.*, DE 25 at 6 ("Affidavit For Wage Deduction Order" notarized in Illinois on June 22, 2018 and filed on June 25, 2018, asserting that judgment had been entered against Pajevic on June 24, 2015 in the amount of $75,000[26]))]. These statements could have been fatal to Gallagher's assertion of diversity jurisdiction because 28 U.S.C. § 1332(a) requires that "the matter in controversy *exceed[ ]* the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332 (emphasis added); *see Zulu v. PNC Bank, N.A.*, No. 1:19 CV 1821, 2019 WL 5677504, at *2 (N.D. Ohio Nov. 1, 2019) ("Plaintiff's demand did not exceed $75,000.00 but instead is $ 75,000.00 exactly. That does not meet the jurisdictional requirement."). But Gallagher filed another document around the

---

[25] As will be seen, this is the same explanation Gallagher gave to the undersigned two years later when he failed to appear at a court-ordered settlement conference.

[26] This assertion was incorrect. The "Affidavit" confuses the Clerk's entry of default (which does not state any amount), *see* Fed. R. Civ. P. 55(a), with a district court's entry of a final default judgment in a specified amount (which has never occurred in either case), *see* Fed. R. Civ. P. 55(b). Gallagher had filed a similar "Affidavit" in the 410 Case on June 30, 2017, which claimed that Pajevic owed him a judgment of "one million dollars." [410 Case, DE 22]. Pajevic testified under oath that Gallagher had attempted to present this "Affidavit" to her employer's payroll department as if it were an official court document. [Tr. Dec. 13, 2017 at 25:7-22 (410 Case, DE 122)]. On July 10, 2017, the district court struck the "Affidavit," stating that it was "improper" because Gallagher was "trying to have [Pajevic's] wages deducted to pay a judgment" when "there is no judgment entered against [Pajevic] in this matter." [410 Case*,* DE 23]. Thus, Gallagher should have known from this previous filing a year earlier, and the court's striking of it, that his "Affidavit for Wage Deduction Order" in the 325 Case was inappropriate.

same time in which he alleged that his damages were $100,000. *See* [325 Case, DE 32 at 1]. Those damages allegedly consisted of (1) having to "rent a special location from his brother in Indiana that was specifically re-designed so that it does not have the appearance of a living residence … [f]or the purpose of secreting his sleeping quarters from [Pajevic]"; (2) having to drive his brother's vehicle and rent a storage facility to secret [sic] his vehicle from" Pajevic; and (3) having his brother verify his location for 24 hours a day and seven days a week continuously to counter any further attempts of [Pajevic] making false statements." [*Id.*]. In addition, Gallagher filed a "Supplemental Jurisdictional Statement" in which he repeated his assertion that he is domiciled in Indiana with a "physical presence" at 2001 E. Main Street, Griffith, Indiana, with the "state of mind" of "intend[ing] to remain there." [*Id.*, DE 33 at 1]. As evidence of his Indiana domicile, Gallagher attached a ComEd electricity bill dated July 24, 2018 with his name and the Griffith address on it, as well as a picture of his Indiana driver's license with an issue date of December 28, 2017. [*Id.* at 3-4].

By order entered August 24, 2018, the Court found Gallagher's filings insufficient because the statement of domicile was not sworn under penalty of perjury and both the electricity bill and the Indiana driver's license were issued after the date on which the 325 Case was filed. [DE 34 at 3]. The Court also noted that there was "no calculation showing how the alleged renovation and rental fees exceed $75,000." [*Id.* at 4]. Gallagher was given additional time to file a second supplemental jurisdictional statement correcting these errors with "proof" of the facts on which he rested his claim to federal court diversity jurisdiction.

On September 6, 2018, Gallagher filed a second jurisdictional statement sworn under penalty of perjury asserting that he resides and is domiciled at the Griffith address, and that the amount in controversy exceeds $75,000. [*Id.,* DE 35 at 1-3]. Gallagher also submitted a copy of

what appears to be pages from the website of the Indiana Bureau of Motor Vehicles showing a driver's license in Gallagher's name associated with the Dyer address effective January 6, 2009 and November 19, 2011, and associated with the Griffith address effective November 5, 2015. [*Id.* at 5]. Additionally, Gallagher filed another "Affidavit Statement Evidence of Damages," which repeated the bases for his damages claims from his earlier filing, but also added that Gallagher had paid his brother $91 a day to provide the location verification services previously described. [*Id.* at 7]. The damages affidavit includes signatures above the printed names of Gallagher and his brother Dennis. [*Id.*].

On September 19, 2018, the Court entered an order in the 325 Case finding that the second supplemental jurisdictional statement and attachments were sufficient to satisfy Gallagher's burden of presenting "competent proof that [he] and [Pajevic] were citizens of different states on August 31, 2015." [*Id.*, DE 36 at 3]. The Court was not satisfied with the evidence Gallagher submitted regarding the amount in controversy, however, stating that Gallagher did not explain how he calculated the $91 per day, and that "he offers no competent evidence in support of this figure." [*Id.* at 4]. Giving Gallagher one final opportunity to submit sufficient proof of his alleged damages, the Court instructed Gallagher that he needed to provide proof other than his own testimony of (1) the rent he allegedly paid to his brother that was in addition to his normal cost of lodging; (2) the rent he allegedly paid to a rental facility for his vehicle; and (3) the alleged renovations to his brother's house and their costs. [*Id.*]. Gallagher responded with a Third Supplement Jurisdictional Statement and a "Formal Invoice Affidavit" in which he now said that the $100,000 in damages did not include rent to his brother for either a place to live or storage for his car, and also did not include the previously mentioned re-design costs. [*Id.*, DE 37, DE 39]. Instead, Gallagher said he was relying only on the cost of "security services" supposedly provided

by his brother. He also argued that the court had overlooked his "non-economic damages" such as his damaged reputation, mental anguish, and pain and suffering. [*Id.,* DE 37 at 4, 5]. On December 14, 2018, the Court issued an order finding that Gallagher's supplemental allegations were sufficient to plausibly allege that the amount in controversy was more than $75,000. [*Id.*, DE 41 at 7].

### 5.    THE UNDERSIGNED'S FURTHER JURISDICTIONAL INQUIRIES

After the cases were reassigned to the undersigned, Gallagher failed to appear at the April 11, 2019 Rule 16 Preliminary Pretrial Conference that had been scheduled in the 325 Case by order dated March 18, 2019 and mailed to the Griffith address. *See* [325 Case, DE 43, 45]. The conference was rescheduled for April 24, 2019, at which time Gallagher appeared. [*Id.*, DE 46, 47]. On May 21, 2019, Pajevic, proceeding without an attorney, filed a document titled "Notice of Answer to The Courts Notice to Provide all Discovery Material as to Local Rule 26-2(A) as it pertains to Initial Disclosures." [*Id.*, DE 50]. In that filing, Pajevic reiterated her argument that Gallagher was not being truthful about where he lived.[27] On June 26, 2019, the Court entered an order interpreting the relief sought by Pajevic's filing as an order for discovery, and instructing Pajevic to serve Gallagher with formal discovery requests. [*Id.*, DE 52].[28]

---

[27] [325 Case, DE 50 at 2 ("Gallagher only provided an Indiana driver's license nothing more. He has been using both his brothers' Indiana addresses, Pat Gallagher, 1450 Joliet St., Dyer IN and Dennis Gallagher, 2001 E. Main Street, Griffith IN both of which he has never resided at. [Gallagher] has failed to produce legal supporting documentation such as receipts for making payments to his brother, Dennis Gallagher.")].

[28] The Local Rules require that all discovery requests and responses in cases involving a pro se party be filed on the docket. N.D. Ind. L.R. 26-2(a)(2)(A). Following the court's order, Pajevic complied with this rule by filing discovery requests in both cases, which filings include a proof of service stating that Pajevic served Gallagher by mailing her discovery requests to the Griffith address. [325 Case, DE 56; 410 Case, DE 64]. Whether Gallagher received the discovery requests mailed to the Griffith address is unclear, but there is no filing on the dockets of either cases that would indicate he ever served responses.

On July 24, 2019, Pajevic, still proceeding pro se, filed a motion in the 410 Case to set aside the entry of default in which she argued that Gallagher had not proven that there was diversity jurisdiction over his case. [410 Case, DE 52 at 1].[29] On August 30, 2019, the Court entered an order denying Pajevic's motion as moot because the entry of default had already been vacated, and then went on to address Pajevic's jurisdictional contentions. [*Id.*, DE 59 at 1]. The Court's order held that Pajevic had not submitted "evidence … by way of affidavit or otherwise" to counter Gallagher's previously submitted evidence that he was domiciled in Indiana. [*Id.* at 2]. The Court specifically stated, however, that its rejection of Pajevic's subject-matter jurisdiction arguments was without prejudice, and that the Court would consider future motions to dismiss raising the issue. [*Id.* at 3].[30]

---

[29] Pajevic also filed a "motion to dismiss," which asserted "[l]ack of proof of any legal injury," and "this is a case of plaintiff abuse of federal court system to legally harass Defendant and collect unlawful settlement." [410 Case, DE 52]. The Court denied this motion on the ground that dismissal of a complaint cannot be based on "lack of proof," which is an argument for summary judgment. [*Id.,* DE 60]. Interpreting the remainder of Pajevic's motion as seeking relief under Rule 11 of the Federal Rules of Civil Procedure, the Court held that the requirements for such relief had not been met. [*Id.*].

[30] In hindsight, the undersigned's August 30, 2019 order may have been somewhat confusing to Pajevic. For example, it instructed Pajevic that any future motion to dismiss for lack of subject matter jurisdiction must contain "factual *allegations* that may support such a claim." [410 Case, DE 3 at 3 (emphasis added)]. But earlier in the order the Court had instructed Pajevic that allegations were insufficient, and that she needed to support her jurisdictional arguments with "*evidence … by way of affidavit or otherwise.*" [*Id.* at 2 (emphasis added)]. Additionally, although Pajevic's motion did not constitute "evidence" because it was unsworn, Pajevic arguably had already provided evidence of her jurisdictional allegations through the state court documents she attached to her Answer as well as through her sworn testimony at the December 13, 2017 hearing. But Pajevic's unsworn motion did not mention or refer to any of this evidence, and "it [is] not the district court's job to sift through the record and make [a party's] case for [her]." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010). In any event, the August 30, 2019 order did not discourage or prevent Pajevic from pursuing the domicile issue, as she filed another motion to address it shortly afterwards, as discussed above.

On November 12, 2019, Pajevic filed a "Motion to Dismiss With Prejudice With Fraud Upon The Federal Court" in both the 310 Case and the 410 Case. Pajevic attached the "Notice of Falsification of Service" previously submitted with her Answer, arguing that the "Notice" "proves to the court that Robert Gallagher does not reside or live[ ] at" the Griffith address, and that "[t]he evidence I have provided shows the court without doubt that Robert Gallagher has not provided the truth and has falsified his Indiana address." [325 Case, DE 58; 410 Case, DE 63]. Briefing on Pajevic's motion was suspended, however, after Pajevic notified the Court that she had been able to obtain pro bono attorney representation. [325 Case, DE 61; 410 Case, DE 68]. Pajevic's counsel entered an appearance in both cases on July 15, 2020, following which Pajevic's previously filed pro se motions to dismiss were denied without prejudice as abandoned.[31]

### 6.    GALLAGHER'S FAILURE TO APPEAR AT SETTLEMENT CONFERENCE

Following the appearance of pro bono counsel on Pajevic's behalf, doubts about the veracity of Gallagher's assertions and submissions regarding diversity jurisdiction persisted, fueled by, among other things, continued instances of Gallagher failing to appear at scheduled conferences. These failures to appear raised a red flag regarding whether Gallagher lived at the Griffith, Indiana address where he claimed to receive mail. Most notably, the Court issued an order directing the parties to appear at a settlement conference on August 26, 2020. The Clerk's office mailed a copy of the scheduling order to Gallagher at the Griffith address on file [325 Case, DE 66; 410 Case, DE 73], but Gallagher did not appear. The Court then entered a show cause order directing Gallagher to file an affidavit explaining his absence. [325 Case, DE 68, 69; 410 Case,

---

[31] *See* [325 Case, DE 63, 410 Case, DE 70 (new counsel "granted 14 days to determine whether or not the motion[] will be withdrawn"); 325 Case, DE 65, 410 Case, DE 72 (warning that "[a]bsent any filing, Defendant's pro se Motion to Dismiss will be denied without prejudice in light of Defendant's current representation by counsel"); 325 Case, DE 67, 410 Case, DE 74 (motion denied without prejudice)].

DE 76, 77]. Gallagher's affidavit in response to the Court's show cause order stated that he was "unaware that the conference was taking place" because he "was out of town for the entire month that the court sent a notice via U.S. Mail." [410 Case, DE 78]. The Court's response to this filing was to enter an order scheduling an in-person hearing. The order observed that "[i]t bears noting that there is an allegation on the record in both cases that Plaintiff has misrepresented his address to the Court." [325 Case, DE 70 at 2; 410 Case, DE 80 at 2]. Accordingly, the order instructed Gallagher to be prepared at the hearing to provide "both an explanation of where he was for the month of August 2020 and confirmation that [he] indeed lives at the address he has supplied to the Court." [325 Case, DE 70 at 3; 410 Case, DE 80 at 3].

At the in-person hearing, Gallagher reiterated his assertion that he had been traveling for work the entire month of August 2020, without any further details to support that claim, other than the vague statements that he frequently travels for work for a month or more at a time, and that he "usually" pays cash or else is travelling with someone else "who is … paying [Gallagher's] way." [Tr. May 11, 2021 at 6 (325 Case, DE 106; 410 Case, DE 123)]. Gallagher further offered that he thought the problem of him not receiving notice from the court mailed to his brother's house in Griffith was "solved" because his brother now understood how important the matter was, and that he could provide an address for an attorney in Illinois "who would accept the mail from this court and notify [Gallagher][;] that way it would take it out of [his] brother's hands so we wouldn't have to rely on him." [*Id.* at 7]. The Court found these responses unsatisfactory given that the settlement conference was not the first time Gallagher had failed to appear at a scheduled hearing. As a result, the Court set a deadline for Gallagher to provide "some type of documentation as to why [he was] gone and unable to receive notice of the hearing," stating that it "would be a very substantial feat for someone to be gone for a month and not have any evidence of being gone." [*Id.* at 6]. The

Court instructed Gallagher that he needed to either provide documentation or else convince [the Court] why [it] shouldn't come to any conclusion about [its] lack of existence." [*Id.* at 10]. Gallagher expressed doubt that he could find any supporting documentation, but said that he was "willing to try." [*Id.* at 6-7].

A month later, Gallagher filed a written response, sworn before an Illinois notary, which neither cited any documentary evidence or other proof of where Gallagher was during the entire month of August 2020, nor explained why Gallagher was unable to find such evidence. Instead, Gallagher argued that requiring him to produce evidence of where he was in that time period imposed a "costly burden" on him in terms of time and money, and that, even if he had looked, documentation likely would not have been available. *See* [325 Case, DE 74 at 1; 410 Case, DE 84 at 1]. Gallagher also complained that he was being treated unfairly, pointing out that two years earlier Pajevic had been excused from her default of filing a late answer but the Court had not asked her "where she was or why she did not appear or answer the complaint." [*Id.*]. Gallagher ended by threatening that if the Court were to dismiss the cases because of his failure to provide documentation of being out of town the entire month of August 2020, it "would cause a 'Lernaean Hyd[r]a' syndrome,[32] or effect, and add another complaint, plus raising additional complaints and challenges from the dead." [*Id.* at 2].

At the next telephonic status conference, the Court stated it did not intend to address Gallagher's written response, which dealt with mostly irrelevant matters. Instead, with the agreement of Pajevic's counsel, the Court moved forward with a rescheduled settlement

---

[32] The "Lernaean Hydra, in Greek legend, …[is] a gigantic water-snake-like monster with nine heads. …. Anyone who attempted to behead the Hydra found that as soon as one head was cut off, two more heads would emerge from the fresh wound." *See https://www. britannica.com/ topic/Hydra-Greek-mythology* (last visited Nov. 6, 2023).

conference. [Tr. July 1, 2021 (325 Case, DE 107; 410 Case, DE 124)]. The conference took place

on December 14, 2021, but no settlement was reached. [325 Case, DE 74 80; 410 Case, DE 90].[33]

### 7. PAJEVIC'S SUMMARY JUDGMENT FILING

The next significant event raising the jurisdictional issue was on June 15, 2022, when

Pajevic filed a motion for summary judgment in the 410 Case.[34] The motion called the Court's

subject-matter jurisdiction into question once again, specifically through Pajevic's "Affidavit"[35]

---

[33] Gallagher failed to appear one more time after the missed settlement conference, at a telephone status conference that had been scheduled for August 24, 2022. An order was issued for Gallagher to show cause in person at the next scheduled hearing date, at which time the Court invited defense counsel to file a motion seeking sanctions. [325 Case, DE 95, 96, 97; 410 Case, DE 111, 112, 113; Tr. Oct. 4, 2022 (325 Case, DE 108; 410 Case, DE 125)].

[34] Prior to the summary judgment filing, there were a number of telephonic status conferences and filings that were devoted to the Court wrangling with Gallagher over his refusal to provide his telephone number to opposing defense counsel. *See* [325 Case, DE 86, 87, 89, 90, 91, 92; 410 Case, DE 96, 97, 99, 104, 105, 106]. The Court had struggled with Gallagher over this issue throughout these proceedings. *See* [325 Case, DE 23, 24]. Both the Federal Rules of Civil Procedure and the Local Rules of this Court require Gallagher to provide a telephone number on all of his filings. *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by … a party personally if the party is unrepresented, and "*must* state the signer's address email address, and telephone number." (emphasis added)); N.D. Ind. L.R. 5-4(a)(9) (stating in relevant part that pleadings, motions, briefs, and notices, "whether filed electronically or by delivering it to the clerk, *must* … include the filer's name, address, telephone number, fax number (where available), and e-mail address (where available)" (emphasis added)). The Court has the authority to order Gallagher to revise each non-compliant filing by providing the missing information and issue a fine of up to $1,000 for every filing that Gallagher fails to revise, or in the alternative, to strike Gallagher's filings for non-compliance with the rules. *See* N.D. Ind. L.R. 1-3. While the Court has refrained from imposing any sanction throughout this litigation, there are good reasons to require compliance with the rule going forward. *See Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) ("The demand that plaintiffs provide contact information is no esoteric rule of civil procedure, but rather the obvious minimal requirement for pursuing a lawsuit." (quotation marks and citation omitted)).

[35] The Court uses quotation marks around the word "Affidavit" because the document is unsworn and therefore technically not one. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) ("An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath." (internal quotation marks and citation omitted)).

and her Local Rule 56-1 Statement of Uncontested Material Facts ("Fact Statement") that were filed with the motion.

The "Affidavit" repeated allegations that Pajevic had been making throughout these proceedings, including that: (1) Pajevic is "a lifelong resident of the State of Illinois"; (2) between 2003 and 2014, Pajevic knew Gallagher as "Kevin Gallagher," not "Robert Gallagher"; (3) Gallagher lived with Pajevic occasionally between 2005 and 2010 and permanently from 2010 through 2014; (4) Pajevic terminated her relationship with Gallagher and evicted him in February 2015; and (5) throughout the entirety of the time Pajevic has known Gallagher, he has lived and worked in Illinois. [410 Case, DE 102-1 ¶¶ 2-9, 11-12]. The Fact Statement then went on to state that it is undisputed that both Pajevic and Gallagher were at all relevant times citizens of Illinois. [*Id.*, DE 102 ¶¶ 1-2]. But the Fact Statement only cited Pajevic's "Affidavit" for these facts, which by itself did not show they were undisputed. Crucially, however, the Fact Statement also asserted that it was undisputed that Gallagher "lived with Pajevic between the years 2005 and 2015" [*id.*, ¶ 3]—an assertion that Gallagher has steadfastly *denied* throughout these proceedings—and to show that this statement was undisputed, the Fact Statement cited the docket entry for the settlement conference that occurred on December 14, 2021. The transcript of the settlement conference, however, was not added to the record until July 25, 2022, and it was not until October 4, 2022, that the Court confirmed with the parties that they were agreeing to the settlement conference transcript being considered for purposes of summary judgment.[36] The transcript shows that, during the settlement conference, Gallagher volunteered the statement that he and Pajevic

---

[36] Both parties indicated their agreement, which was formally noted on the docket at that time. *See* [325 Case, DE 97; 410 Case, DE 113].

26

"lived together for ten years[] … [from] 2005 to 2015." [Tr. Dec. 14, 2021 at 4 (325 Case, DE 94; 410 Case, DE 110)].[37]

On March 28, 2023, the Court issued an opinion and order denying Pajevic's motion for summary judgment in the 410 Case without prejudice, and ordering an evidentiary hearing on the question of whether the Court had subject-matter jurisdiction. As the Court explained:

> In cause number 2:15-CV-410, Defendant Nada Pajevic filed a motion for summary judgment, with an affidavit in which she attests that Plaintiff Robert Gallagher was a citizen of Illinois, not Indiana, when the complaint was filed. Although the motion does not explicitly request dismissal on that basis, Pajevic's evidence calls the Court's subject-matter jurisdiction into question.
>
> …. The Court previously found, on a preliminary basis, that it had diversity jurisdiction over this action, subject to any further challenge supported by additional evidence. Pajevic's motion and affidavit present evidence that challenges the Court's jurisdiction. Accordingly, the motion for summary judgment will be denied without prejudice and the Court will hold an evidentiary hearing on the issue of Gallagher's citizenship.

[325 Case, DE 100 at 1; 410 Case, DE 116 at 1].

The hearing to determine Gallagher's citizenship[38] was held on April 18, 2023. *See* [325 Case, DE 102; 410 Case, DE 118]. During the hearing, Gallagher gave sworn testimony that

---

[37] Even without the parties' agreement to allow their statements during the settlement conference to be considered as evidence in the case, the Court would not necessarily be precluded by Fed. R. Evid. 408(a)(2) from relying on Gallagher's admission at the settlement conference that he lived with Pajevic for ten years for purposes of assessing its own subject-matter jurisdiction. *See, e.g., Bankcard Am., Inc. v. Universal Bancard Sys., Inc*., 203 F.3d 477, 484 (7th Cir. 2000) (stating that Rule 408(a)(2) "is not an absolute ban on all evidence regarding settlement negotiations," and, specifically, that the rule "permits evidence that is otherwise discoverable or that is offered for a purpose *other than establishing liability*" (emphasis added)).

[38] The Court's order on Pajevic's motion for summary judgment declined to revisit the issue of whether the amount in controversy requirement for federal court jurisdiction has been met. *See* [325 Case, DE 102 at 2 n.2; 410 Case, DE 116 at 2 n.2]. For this reason, this Opinion and Order will not address the amount in controversy requirement either, other than to note that, after a

directly contradicted statements he has made during other conferences or hearings and in court filings. Here are a few examples:

| Testimony at April 18, 2023 Hearing[39] | Inconsistent Statements/Testimony |
|---|---|
| He did not pay rent to either his brother or his father between 2010 and 2015. [Tr. Apr. 18, 2023 at 29:12-22]. | He "has had to rent a special location from his brother in Indiana…." [325 Case, DE 32 (Aug. 13, 2018)]. |
| He has no utility bills in his name showing where he was living. [Tr. Apr. 18, 2023 at 25:3-11]. | Electricity bill in his name with the Griffith address, submitted as evidence of an Indiana domicile. [325 Case, DE 33 (Aug. 13, 2018)]. |
| He does not "work" for the United Nations; he only voluntarily passes along information to them about human rights violations. [Tr. Apr. 18, 2023 at 30-31]. | He is "a Human Rights Defender who works on behalf of the United Nations investigating Human Rights abuses." [410 Case, DE 44 at 15 (Jan. 30, 2018)]. |
| The fact that he visited his girlfriend in Illinois "doesn't mean [he] live[d] there. [He] never had a key for her house. [He] was not a resident of [Pajevic's] house." [Tr. Apr. 18, 2023 at 7:4-6]. He stayed at Pajevic's house in Illinois "on occasion," "maybe two or three times a week, usually on the weekends," but "it was not [his] residence." [*Id.* at 21:15-20].<br><br>*See also* [Tr. Dec. 13, 2017 at 10:8-13 (410 Case, DE 122) ("There were times [he] would spend four, five days" with Pajevic but "no, [he never lived with her], he "was always domiciled in Indiana")]. | "We lived together [at the Romeoville address in Illinois] for ten years … something like 2005 to 2015 …." [Tr. Dec. 14, 2021 at 4:5-9 (325 Case, DE 94; 410 Case, DE 110)]. |
| He moved to [the Joilet Street address] in Dyer in 1982, and lived there for six or seven years, and then in around 1988, moved in with his brother Dennis at the Griffith | The statement by his brother Dennis in the "Notice of Falsification of Service" that he did not live at the Griffith address was written at a time when he was "mov[ing] |

___

thorough review of the present record, the Court currently doubts that Gallagher ever provided a plausible basis for inferring that either complaint puts into controversy more than $75,000.

[39] [Tr. Apr. 18, 2023 (325 Case, DE 109; 410 Case, DE 126)].

address. [Tr. Apr. 18, 2023 at 19:8-21]. He has lived at the Griffith house ever since (although he would go sometimes back and forth between the Griffith house and the Dyer house). [*Id.* at 19:25; 20:1-8].

*See also id.* at 20-21 (Gallagher: "I don't have exact dates because I didn't ever thought [sic] that I'd be questioned as to where I lived in Illinois, so I never thought it would be necessary to remember all these dates." The Court: "You just said where you lived in Illinois. When did you move back to Illinois?" Gallagher: "Pardon?" The Court: "You said where you lived in Illinois. Did you move back to Illinois?" Gallagher: "No, I don't think so.")].

from Dyer, Indiana, to Griffith Indiana and that was before the post office master knew that [he] lived there." [Tr. Dec. 13, 2017 at 6:19-20 (410 Case, DE 122)].

He "was not living with his brother in Griffith, Indiana at that point in time" (i.e., in May 2015, when his brother, Dennis, signed the Notice of Falsification of Service). [410 Case, DE 44 at 4 (Jan. 30, 2018); *see also* Tr. May 11, 2021 at 7:22-24; 7:25; 8:1 (325 Case, DE 106; 410 Case, DE 123) (the 1450 Joliet Street address is where his other brother, Pat," lives, and he "d[oes not] get mail there"; he "was not living" with his brother, Dennis, when Pajevic tried to serve him there)].

Gallagher's inconsistent statements are not limited to his testimony at the April 18, 2023 jurisdictional hearing. The Court can cite to other examples where Gallagher's statements in this lawsuit are inconsistent with statements he made in other lawsuits,[40] and even inconsistent statements within the same filing or testimony. Here are a few examples:

| On the on hand, …. | On the other… |
|---|---|
| On December 13, 2017, Gallagher was asked by the Court, "Did you know at any point in your relationship that Pajevic had genital herpes?," to which he answered "No, I did not." [Tr. Dec. 13, 2017 at 13:5-7 (410 Case, DE 122)]. | Immediately before and after that testimony, Gallagher testified that he learned Pajevic had herpes when he first started getting symptoms himself towards the end of their relationship and questioned her about it, even taking some of her medicine to treat his own symptoms. [Tr. Dec. 13, 2017 at 11:16-19; 12:4-10; 18:3-7 (410 Case, DE 122)]. |

---

[40] The Court has the authority to consider filings pulled directly from the Pacer Case Locator system, *https://pcl.uscourts.gov/pcl/pages/ search/findParty.jsf* (search Party Name, Gallagher, Robert and Gallagher, Kevin), in addition to the documents supplied by the parties. *See Atl. Specialty Ins. Co. v. City of Coll. Park, Ga.*, 319 F. Supp. 3d 1287, 1292 n.5 (N.D. Ga. 2018) (citing Fed. R. Evid. 201(c), which allows the Court to take judicial notice of documents on its own initiative); *see also Gallagher v. Weber*, 2:08-cv-136, Dkt. #4 (N.D. Ind. May 12, 2008) (taking judicial notice of *in forma pauperis* petitions filed by "Keven Gallagher" in several cases in the Northern District of Illinois).

| | |
|---|---|
| On December 13, 2017, Gallagher testified that "Kevin" is his middle name. [Tr. Dec. 13, 2017 at 6:15-16 (410 Case, DE 122)]. Gallagher also has represented in this lawsuit that he is a "Human Rights Defender working on behalf of the United Nations" [410 Case, DE 44 at 15]. | In *Gallagher v. Weber*, note 40, *supra,* Dkt. # 1 ¶¶ 25, 57, Gallagher alleged that "Kevin" was his brother's name, and that it was the brother Kevin who worked for the United Nations as a "Human Rights Defender." |
| In a 2008 lawsuit, Gallagher entered a pro se appearance using the name "Kevin Gallagher" and the Dyer address, while stating in an in forma pauperis application that he resided with his brother Pat and father Emil, and that the residence was owned by Emil.[41] <br><br> In a 2013 lawsuit, Gallagher entered a pro se appearance under the name "Robert Gallagher" but using Pajevic's Romeoville, Illinois address, and he stated in an in forma pauperis application that he lives with his father, Emil, who owns the residence any real estate.[42] | In a different 2008 lawsuit, Gallagher entered a pro se appearance under the name "Kevin Gallagher" and the Dyer address, but stated in an in forma pauperis application that he lives with his brother Pat and no one who lived at that address owned any real estate.[43] |

## DISCUSSION

### I.

#### A. THE COURT'S DUTY TO ASSURE ITSELF OF SUBJECT-MATTER JURISDICTION

"[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562

---

[41] *Gallagher v. Ill. State Police Dept.*, No. 1:08-cv-5898 (N.D. Ill., filed Dec. 16, 2008) (Dkts. ## 3, 4).

[42] *Gallagher v. Dursun*, No. 1:13-cv-7891 (N.D. Ill., filed Nov. 4, 2013) (Dkts. ## 3, 66).

[43] *Gallagher v. Office of the Pub. Defender of DuPage Cnty.*, 1:08-CV-1424 (N.D. Ill., filed Mar. 18, 2008) (Dkts. ## 3, 4).

U.S. 428, 434 (2011). The duty of the court to make sure subject-matter jurisdiction exists is "codified in the Civil Rules, which provide '(w)henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject-matter, the court *shall* dismiss the action.'" *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980) (quoting Fed. R. Civ. P. 12(h)(3) (emphasis added by court)). Although dismissal late in the proceedings "occasionally is both wasteful of judicial resources and harsh in its results," *id.* at 1189, "not only may the federal courts police subject-matter jurisdiction *sua sponte*, they must." *Hays v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2022); *see Sykes v. Cook Inc*., 72 F.4th 195 (2023) (vacating district court's grant of summary judgment in favor of the defendant and remanding with instructions to dismiss without prejudice for lack of subject-matter jurisdiction after sua sponte raising the issue and finding that the plaintiffs had not properly invoked federal diversity jurisdiction).

Gallagher protests that "this is the third time that the court has raised this issue of diversity." [325 Case, DE 103 at 2; 410 Case, DE 119 at 2]. It is true that, far from going unexamined until now, the Court's subject-matter jurisdiction over the 325 Case and 410 Case was addressed on a number of previous occasions, as the preceding Background discussion demonstrates. Nevertheless, the Court's ongoing obligation to ensure that it is acting within the scope of its jurisdictional authority dictates that the issue of this Court's subject-matter jurisdiction be taken up again. *See Bronner v. Duggan*, 364 F. Supp. 3d 9, 17 (D.D.C. 2019) (rejecting the plaintiffs' objection "that this Court has already thrice concluded that it has subject-matter jurisdiction over this action"), *aff'd,* 962 F.3d 596 (D.C. Cir. 2020). In reexamining the issue, the Court is not questioning the previous findings in the record to the effect that Gallagher had sufficiently shown that there was diversity jurisdiction over his claims. However, the evidentiary record when those findings were made was not as developed as it is now. Specifically, over time, the number of

occasions on which Gallagher missed a conference, hearing, or deadline, apparently as a result of not receiving notice mailed to the Griffith address, became too many to ignore. Then Gallagher raised even more doubts about where he actually lives when he failed to produce documentation to support his excuse for not receiving notice of the August 2020 settlement conference sent to the Griffith address. Even his dogged determination *not* to provide the Court and opposing counsel with a telephone number could be seen as connected in some way to the question of where he lived.[44]

It is not surprising that the Court might not have picked up on these emerging discrepancies during the early phases of these lawsuits. As one court explained, "[a]t times, it is understandably difficult for pro se litigants to participate effectively in our legal system, and for this reason, the Court takes pains to afford pro se litigants great liberty in presenting and pursuing their claims. At the same time, the Court expects and requires that all litigants—pro se or not—be forthright and honest with the Court." *Burhans v. Amler*, No. 06 CIV. 8325 (SCR), 2009 WL 10741846, at *2 (S.D.N.Y. May 14, 2009). The Court "expected and presumed that [the pro se] parties .... w[ould] not knowingly misrepresent material facts to the court." *Purple Innovation, LLC v. Honest Revs., LLC*, No. 2:17-CV-138-DB, 2018 WL 840035, at *6 (D. Utah Feb. 12, 2018). Unfortunately, there may always be pro se litigants who will take advantage of the liberty courts typically accord them, and then, realizing their subterfuge has gone undetected, reach the conclusion that their dishonest gamble has paid off and thus continue further down that path. It can take a great deal of time and effort to suss out such dishonesty. "Not only does false testimony undermine the truth-seeking

---

[44] It is possible Gallagher did not want to accept calls on his cell phone because he was concerned those calls might show his location at the time of making/receiving them. In fact, Gallagher hinted as much in one of his filings. *See* [325 Case, DE 91 at 2; 410 Case, DE 105 at 2 ("More then [sic] likely the defendant's attorney just wants the plaintiff's phone number so he can illegally track and/or spy on the plaintiff's locations.")].

function of the judiciary, but a party's lies put the judicial system through ... unnecessary work, which harms honest litigants who count on the courts to decide their cases promptly and fairly." *Littler v. Martinez*, No. 2:16-CV-472-JMS-DLP, 2020 WL 42776, at *4 (S.D. Ind. Jan. 3, 2020) (internal quotation marks and citations omitted). That the undersigned and previously assigned judges expected and relied on the litigants in these matters to represent their claims in an honest and forthright fashion is not a reason for finding fault with past rulings in the case. Nor does it excuse further inquiry when it becomes apparent that such honesty might have been lacking.

      **B.**    **STANDARD OF REVIEW**

These cases do not involve any federal question, so subject-matter jurisdiction is proper here only if the requirements of the diversity statute are satisfied. A district court has diversity jurisdiction where no defendant is a citizen of the same state as any plaintiff and the amount in controversy exceeds $75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Whether the Court has diversity jurisdiction "is essentially a question of fact on which the plaintiff has the burden of proof." *Alexander v. Allister Constr. Co.,* 424 F. Supp. 277, 278 (N.D. Ill. 1976) (citing *Julien v. Sarkes Tarzian, Inc*., 352 F.2d 845 (7th Cir. 1965)); *see Smart v. Local 702 Int'l Bhd. of Elec. Workers,* 562 F.3d 798, 802-03 (7th Cir. 2009) ("the party seeking to invoke federal diversity jurisdiction bears the burden of demonstrating that the requirements for diversity are met").

At the pleading stage of a case, a district court "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *United Transp. Union v. Gateway W. Rwy. Co.,* 78 F.3d 1208, 1210 (7th Cir. 1996). But if the factual basis for jurisdiction is called into question, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject-matter jurisdiction exists." *Capitol Leasing Co. v.*

*F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). When considering the evidence presented in support of or opposition to allegations of jurisdictional facts, "the court may hold an evidentiary hearing" or employ "any [other] rational mode of inquiry." *Lumpkin v. United States*, 791 F. Supp. 747, 749 (N.D. Ill. 1992) (quoting *Crawford v. United States*, 796 F.2d 925, 929 (7th Cir. 1986)). "The Court is not required … to essentially take [Gallagher's] word at face value in spite of evidence to the contrary. This is particularly true when district courts are empowered to make findings of fact regarding subject-matter jurisdiction." *Indus. Maint. Eng'g, Inc. v. Johnson*, No. 2:20-CV-659-JMS-DLP, 2021 WL 4902376, at *7 (S.D. Ind. Oct. 21, 2021). The Court has "considerable" discretion in weighing the evidence and finding the jurisdictional facts, and its ultimate decision is reviewable on appeal only for "clear error." *Salem v. Egan*, 803 F. App'x 928, 932 (7th Cir. 2020).

C.    LEGAL PRINCIPLES REGARDING DIVERSITY OF CITIZENSHIP

Complete diversity of citizenship "is essential" in cases brought under 28 U.S.C. § 1332. *Ind. Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 318 (7th Cir. 1998). Citizenship is determined by the parties' domicile, which is "not necessarily synonymous with 'residence.'" *Miss. Band of Choctow Indians v. Holyfield*, 490 U.S. 30, 48 (1989). "[O]ne can reside in one place but be domiciled in another." *Id.* For adults, domicile is established by physical presence in a place coupled with an intent to remain there. *Texas v. Florida*, 306 U.S. 398, 424 (1939); *Sadat,* 615 F.2d at 1180. Domicile "is not a thing, like a rabbit or a carrot, but a legal conclusion, though treated as a factual determination for purposes of demarcating the scope of appellate review." *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991).

"One acquires a 'domicile of origin' at birth, and that domicile continues until a new one (a 'domicile of choice') is acquired." *Holyfield*, 490 U.S. at 48. "Establishing a new domicile

34

requires that two things occur simultaneously: first, one must be physically present in a new state; second, one must develop an intention to remain there indefinitely." *Salem*, 803 F. App'x at 931 (citing *Holyfield*, 490 U.S. at 48). Unless and until both of these things occur simultaneously, a person retains his old domicile even if he does not currently reside there. *Id.* "Even 'a protracted absence from one's domicile does not establish a new domicile.'" *PopSockets, LLC v. Hueffner*, No. 17-CV-827-PP, 2018 WL 4568823, at *5–6 (E.D. Wis. Sept. 24, 2018) (quoting *Eliason v. Molgaard*, No. 15-cv-833-WMC, 2016 WL 3248607, at *4 (W.D. Wis. June 10, 2016)). "[A]fter one's domicile is established, it does not change unless that person moves to a different state and, while there, develops the intention to remain indefinitely." *Salem*, 803 F. App'x at 931.

Diversity jurisdiction is determined by examining the citizenship of the parties at the time the action is commenced, *Altom Transp., Inc. v. Westchester Fire Ins. Co.,* 823 F.3d 416, 420 (7th Cir. 2016). Nevertheless, evidence regarding a party's domicile from before and after those dates is relevant to determining that party's domicile on those dates. *See Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993) (rejecting argument "that inquiry into a party's domicile is restricted to information about that party's activities on the date suit is filed, holding that parties 'entire course of conduct" is relevant).

### D. ANALYSIS

There is no dispute that Gallagher's domicile of origin is Indiana, where he was born and where he graduated from high school. *See* [Tr. Apr. 18, 2023 at 6, 15 (325 Case, DE 109; 410 Case, DE 126)]. The question is whether Gallagher changed his domicile from Indiana to Illinois at any point after high school, and if so, whether he ever changed his domicile from Illinois back to Indiana before he filed these lawsuits. The legal principles discussed in the previous section

give rise to a presumption in favor of an established domicile over a new one.[45] But "[t]his presumption does not shift the burden of proof to establish diversity of citizenship away from the proponent of federal jurisdiction[.] … The effect of the presumption is that the party challenging jurisdiction must come forth with some evidence showing the party claiming his old domicile changed his domicile." *Washington v. Hovensa LLC*, 652 F.3d 340, 345–47 (3d Cir. 2011). If the opposing party successfully produces evidence regarding a change of domicile, "the presumption is defeated, the case proceeds, and the party asserting jurisdiction bears the burden of proving diversity of citizenship." *Id.*

Gallagher has contended throughout these proceedings that he is a "life-long" resident of Indiana. But his numerous statements in the record to that effect are contradicted by his testimony at the jurisdictional hearing, when he admitted that, after getting married at twenty years old he moved with his wife to Lansing, Illinois. [Tr. Apr. 13, 2023 at 16:14-19 (325 Case, DE 109; 410 Case, DE 126)]. While he also testified that he later moved back to Indiana with his wife [*id.* at 17:6-8], he cannot claim to be a "life-long" resident of Indiana without mentioning there was a period of time (regardless of how long ago or how brief) when he admittedly resided in Illinois with his wife.[46] The Court finds that the presumption in favor of Gallagher's Indiana domicile of origin has been rebutted by Gallagher's own testimony that, after high school, he moved to Illinois with his former wife. But the Court will assume that Gallagher's testimony about later returning

---

[45] *See 24 Hour Fitness USA, Inc. v. Bally Total Fitness Holding Corp.*, No. 08 CV 3853, 2008 WL 4671748, at *4 (N.D. Ill. Oct. 21, 2008); *see also Kenosha Unified Sch. Dist. v. Stifel Nicolaus & Co.,* 607 F. Supp. 2d 967, 974 (E.D. Wis. 2009) ("Courts entertain a presumption in favor of an individual's old, established domicile.").

[46] The Court also notes that in a 2008 case brought by Gallagher against the Indiana Bureau of Motor Vehicles, Gallagher alleged in his complaint that, "[o]n September 12, 2006 the plaintiff moved to Indiana *from Canada*[.]" *Weber*, note 40 *supra*, Dkt. # 1 ¶ 8 (emphasis added).

to Indiana with his wife re-established his Indiana domicile of origin. The presumption in favor of that re-established Indiana domicile, however, falls away based on evidence in the record regarding a change in domicile after Gallagher's divorce, namely Pajevic's testimony and documentary evidence discussed in the Background section of this Opinion and Order. Thus, there is no presumption in favor of an Indiana domicile at the time these lawsuits were filed and Gallagher must prove his Indiana domicile by a preponderance of the evidence.

### 1. DID GALLAGHER RESIDE IN ILLINOIS?

"In most cases, the difficult issue is not presence but whether the intent to change domicile can be shown." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 798 (5th Cir. 2007). But here, Gallagher disputes that he ever resided in Illinois following his divorce. Gallagher testified at the jurisdictional hearing that, after his divorce around 1982, he moved back in with his father at the Dyer address, and that, around 1988, he moved from the Dyer house to his brother Dennis's house in Griffith. [*Id.* at 18:12-16, 19:11- 12, 19:18-23]. Gallagher testified that he has lived at the Griffith house ever since (although he would go back and forth sometimes between the Griffith house and the Dyer house). [*Id.* at 19:25, 20:1-8]. In contrast to Gallagher's testimony, Pajevic claims that she and Gallagher were in a relationship from about 2003 through January 2015, and that, for at least ten of those twelve years, Gallagher resided full-time with her in Romeoville, Illinois. The Court pauses for a moment to acknowledge that Pajevic's summary judgment motion may not include admissible evidence on the question of Gallagher's domicile because Pajevic's "Affidavit" is unsworn, and further, may not qualify under 28 U.S.C. § 1746 as a declaration admissible in lieu of a sworn affidavit.[47]

---

[47] To qualify as an unsworn declaration under 28 U.S.C. § 1746, the statement must be signed by the declarant "under the penalty of perjury" and verified as "true and correct." *See, e.g., Mirocha v. Palos Cmty. Hosp.*, 240 F. Supp. 3d 822, 845 (N.D. Ill. 2017) (internal quotation marks and citation omitted). While Pajevic attests that the matters stated in the "Affidavit" are "true and

Nevertheless, even if it does not qualify as evidence, the Court can rely on Pajevic's sworn testimony at the December 13, 2017 hearing, which is essentially the same as her statements in the summary judgment "Affidavit." The Court also relies on documents submitted by the parties, and on Gallagher's own admission during the December 14, 2021 settlement conference. As previously noted, Gallagher stated at the settlement conference that he and Pajevic "lived together for ten years[] … [from] 2005 to 2015." [Tr. Dec. 14, 2021 at 4:5-9 (325 Case, DE 94; 410 Case, DE 110)]. This statement contradicts Gallagher's statements in pleadings, sworn affidavits, and sworn testimony both before and after the settlement conference denying that he ever living with Pajevic:

> *August 31, 2015 Defamation Complaint, November 5, 2015 Tortious Infection Complaint, and December 22, 2015 Amended Tortious Infection Complaint:* He only "stayed" at Pajevic's house in Illinois "at times … when he had to conduct business in that state." [325 Case, DE 1; 410 Case, DE 1, 4].

> *December 13, 2017 Sworn Testimony :* "Q: Did you ever live with her? A: Well, that's debatable. There were times I would spend four, 5 days there. [Tr. Dec. 13, 2017 at 10:8:10 (410 Case, DE 122)].

> *September 6, 2018 Affidavit:* The Griffith house in Indiana has been "his long term place where he has and is intending to live and also reside as his home for a permanent residence, existing perpetually; everlasting." [325 Case, DE 35 at 2].

---

accurate to the best of [her] knowledge and belief" [410 Case, DE 102-1 at 2], she does not use the statutory language "under penalty of perjury." This omission might render the declaration ineffective. *See, e.g., Trapaga v. Cent. States Joint Bd. Loc. 10,* No. 05 C 5742, 2007 WL 1017855, at *4 (N.D. Ill. Mar. 30, 2007) (stating that the court was not "aware of any authority holding that a declaration is admissible pursuant to § 1746 without language "explicitly attest[ing] to the truth of the statements therein 'under penalty of perjury'"); *Ghazi v. Fiserv, Inc.,* 904 F. Supp. 823, 827 (N.D. Ill. 1995) (where the court rejected two affidavits because they were improperly notarized and also failed to satisfy § 1746 in that "neither affiant states that he or she declares the contents of the affidavit to be true under the penalty of perjury"); *In Stewart v. Core Labs., Inc.,* 460 F. Supp. 931, 938-39 (N.D. Tex. 1978) (unsworn declaration held insufficient because, even though the affiant stated that its contents were true, she left out the "under penalty of perjury" language); *In re Muscatell*, 106 B.R. 307, 309 (Bankr. M.D. Fla. 1989) (concluding that an unsworn declaration will not satisfy § 1746 unless it both states that the writing is true and "includes the phrase, 'penalty of perjury'").

*December 14, 2021 Settlement Conference:* "**We lived together [at the Romeoville address in Illinois] for ten years … something like 2005 to 2015 .…**" [Tr. Dec. 14, 2021 at 4:5-9 (325 Case, DE 94; 410 Case, DE 110)].

*April 18, 2023 Sworn In-Person Testimony:* Living in Indiana "doesn't mean I'm locked in Indiana … I can go visit the girlfriend in Illinois." Visiting my girlfriend in Illinois "doesn't mean I live there. I never had a key for her house. I was not a resident of the plaintiff's house." [Tr. Apr. 18, 2023 at 7:4-6 (325 Case, DE 109; 410 Case, DE 226)]. I stayed at Pajevic's house in Illinois "on occasion," "maybe two or three times a week, usually on the weekends," but "it was not my residence." [*Id.* at 21:15-20].

In any event, Gallagher's sworn statements that he never lived with Pajevic are pieces of evidence, but themselves insufficient if other evidence raises reasonable doubts as to the truthfulness of the statements, in which case Gallagher must submit other evidence to corroborate his statements. *Gravdahl v. Conwell*, No. 00 C 0579, 2002 WL 398599, at *3 (N.D. Ill. Mar. 14, 2002) (citing *Klement v. W. Irving Die Casting Co*., No. 84 C 3910, 1986 WL 4130, at *1 (N.D. Ill. Mar. 28, 1986)). Aside from Gallagher's general lack of credibility,[48] the Court finds that the evidence supports Pajevic's testimony that Gallagher lived in Illinois when she met him in 2003[49]

---

[48] "All evidence is inferential; whether to believe a witness depends not only on an instinctual reaction to facial expression, gestures, voice pitch, and other cues to honesty, but also on the consistency of the witness's testimony with itself, with other evidence, with common knowledge, and with the laws of nature." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (internal citation omitted). Gallagher's credibility in the Court's eyes has been seriously undermined by the many instances in the record in which he contradicted himself on relevant facts, as discussed throughout this Opinion and Order. *See Mullins v. Hallmark Data Sys., LLC*, 511 F. Supp. 2d 928, 936 (N.D. Ill. 2007) (credibility is undermined by a party's "shifting explanations").

[49] In fact, there is evidence to suggest that Gallagher first started living in Illinois well before 2003. *See, e.g., Gallagher v. City of Rolling Meadows*, No. 1:94-cv-5400 (N.D. Ill., filed Oct. 4, 1994) (diversity case listing the address for the pro se plaintiff, "Kevin Gallagher," as P.O. Box 92254, Elk Grove Village, Illinois 60009"; case dismissed for lack of subject matter jurisdiction (Dkt. # 9)); *Gallagher v. Howard*, No. 1:95-cv-2807 (N.D. Ill., filed May 17, 1995) (same; case dismissed for lack of subject matter jurisdiction (Dkt. # 4)); *Gallagher v. City of Naperville*, No. 1:97-cv-2015 (N.D. Ill., filed Apr. 1, 1997) (same; case dismissed because "both plaintiff and defendant are currently citizens of Illinois" (Dkt. #6)); *Gallagher v. City of Naperville*, No. 1:97-

and then moved in with her at the Romeoville address around 2005 where he lived until the eviction in February 2015. Further, the evidence shows that he most likely continued to live in Illinois after the eviction as well.

First, Gallagher's testimony that he never lived with Pajevic in Illinois is refuted by the documents Pajevic submitted with her Answer. *See In re Chavin,* 150 F.3d at 728 (lack of credibility may be shown by "[d]ocuments or objective evidence" that "contradict the witness' story"). For instance, Pajevic submitted a copy of an Illinois Forcible Entry and Detainer Order dated April 20, 2015, which finds that she is "entitled to possession" of the Romeoville, Illinois premises, and that such possession was being "wrongfully withheld from" her by Gallagher. [325 Case, DE 12 at 18-19]. The Illinois state court's finding that Gallagher was wrongfully withholding the Romeoville premises from Pajevic supports Pajevic's testimony that Gallagher was not merely an occasional overnight guest but had been living at her house for an extended period of time. Gallagher contests Pajevic's allegations about having to evict him from her Illinois home, asserting that an eviction "was not possible because [he] was domiciled in Indiana." [410 Case, DE 44 at 7]. If Gallagher is attempting to make some sort of legal argument for why the eviction "was not possible," the Court does not see the relevance. And Gallagher's factual assertion that Pajevic did not "have any court orders of eviction to support" her allegations is refuted by the Illinois Forcible Entry and Detainer Order attached to Pajevic's Answer.

Similarly, the Illinois order of protection in favor of Pajevic dated April 20, 2015 finds that both Pajevic and Gallagher "have right to occupancy" of the Romeoville house, but that "the

cv-2018 (N.D. Ill., filed July 24, 1997) (same; case dismissed because "plaintiff has failed to sufficiently allege a jurisdictional basis" (Dkt. # 7)).

balance of hardships favors temporary possession by" Pajevic. [325 Case, DE 12 at 4, 8, 14].[50] The Illinois domestic court's express finding that Gallagher had a legal right to occupancy of the Romeoville house again supports Pajevic's testimony that Gallagher was not merely an occasional overnight guest but had been living at her house for an extended period of time. In addition, although the order shows that Gallagher's "home" address at the time the protection order was entered was the Griffith, Indiana address, it also indicates that Gallagher had an Illinois driver's license and an Illinois license plate, and that his place of work was in Illinois. [*Id.* at 4]. The findings of two Illinois state courts thus point to Gallagher living full-time in Pajevic's home in the time period to which Pajevic testified, and that he likely continued to live in Illinois even after he was evicted.

Gallagher's allegations in the 325 Case regarding the property he removed from Pajevic's house also support Pajevic's testimony on the question of where Gallagher lived in the disputed time period. At the April 18, 2023 jurisdictional hearing, Gallagher claimed that he "never had a key to [Pajevic's] house." [Tr. Apr. 18, 2023 at 7:4-6 (325 Case, DE 109; 410 Case, DE 126)]. Yet he asserts that he took the office equipment from Pajevic's house in order to return it to AT&T. When asked at the settlement conference if it was his business that Pajevic had possession of AT&T's equipment, Gallagher answered it was, because he "was in the house where she was living[.]" [Tr. Dec. 14, 2021 (325 Case, DE 94; 425 Case, DE 110)]. While it is not impossible that he *could* have been only a guest at Pajevic's house without his own key and still been able to remove the office equipment against Pajevic's will and/or without her knowledge, that seems less

---

[50] Gallagher makes a number of assertions about the Illinois domestic court's refusal to extend the protection order beyond its expiration date. [410 Case, DE 44 at 8-9]. But he has not submitted any state court documents to support those assertions, and the Court does not in any event see the relevance of his arguments.

plausible to the Court than the conclusion that his testimony about never having a key to Pajevic's house is untrue. *See In re Chavin,* 150 F.3d at 728 ("the story itself may be so … implausible on its face that a reasonable factfinder would not credit it").

Then there is the May 3, 2015 "Notice of Falsification of Service" and envelope addressed to Gallagher at the Griffith street address that is marked "addressee unknown," "unable to forward" and "return to sender." Either the "Notice" is, as Pajevic claims [325 Case, DE 13 at 2], a fake document created by Gallagher who forged his brother's signature in an attempt to avoid service in the Illinois protection order proceedings, or it is, as Gallagher has claimed [410 Case, DE 44 at 2], an authentic document written and signed by his brother, Dennis. If the document was created and signed by Gallagher, and not his brother Dennis (which seems likely given the similar "Notice" supposedly written by Gallagher's landlord in Batavia, Illinois), then Gallagher forged a fake court document, which he then allowed his attorney to present as evidence in an Illinois state court, and further misrepresented the veracity of that false evidence to this Court. But if the document is genuine as Gallagher has represented during these proceedings, then the Court cannot reconcile its contents with Gallagher's testimony that he has always lived at one or the other of his brothers' houses in Indiana: the "Notice" states that Gallagher "*does not* live" at the home of his brother Dennis, 2001 E. Main Street in Griffith, Indiana, "*nor does he live at*" his brother Pat's house, "1450 Joliet St. in Dyer, Ind." [410 Case, DE 41 at 7].[51]

---

[51] At the December 13, 2017 hearing, Gallagher testified under oath that his brother's statement in the "Notice" that he did not live at the Griffith address was written at a time when he [Gallagher] was "moving from Dyer, Indiana, to Griffith Indiana and that was before the post office master knew that I lived there." [Tr. Dec. 13, 2017 at 6:19-20 (410 Case, DE 122)]. The problem with that explanation is that the "Notice" states that Gallagher did not live at his other brother's house in Dyer either. If Gallagher is now saying he was not living at either the Dyer or Griffith house at the time, then he gave false testimony under oath at the December 13, 2017 hearing when he led the Court to believe that he moved from the Dyer house to the Griffith house. Subsequent to the December 13, 2017 hearing, Gallagher suggested on several occasions that he lived in some

There are other inconsistencies in Gallagher's testimony, or between his testimony and documents he has submitted, as well. For instance, at the jurisdictional hearing Gallagher denied ever having paid rent to his brother Dennis, but in the 325 Case he stated in a sworn affidavit that he had. Gallagher also testified at the jurisdictional hearing that he moved from the Dyer house to the Griffith house around 1988. But during the jurisdictional hearing, he submitted an Application for Retirement Insurance Benefits dated February 18, 2014, which indicated that his address was the Dyer house. The Court is not saying that no explanation for this discrepancy is possible. But the discrepancy is not minor—there is a 26 year difference in the dates—and, in any event, the real point is that Gallagher's listing of an address on a particular document is not reliable evidence of where he actually lived at the time. This applies to the other documents submitted by Gallagher at the jurisdictional hearing, consisting of mail addressed to him at the Griffith address in Indiana, and statements or invoices with Gallagher's name and the Griffith address. While Gallagher undeniably used the Griffith address as a mailing address, none of the documents are indicative of whether he actually lived at that address at the time in question. Significantly, those documents are the only evidence Gallagher has submitted of where he lives or lived other than his testimony, which the Court finds to be not credible for all the reasons discussed.

It is true that the documents Gallagher submitted do not irrefutably show that he lived in Illinois any more than they prove he lived in Indiana. But they are at least suggestive of a physical presence in Illinois rather than in Indiana. For example, Gallagher submitted an invoice dated

---

undisclosed third location around this time. *See, e.g.,* [410 Case, DE 44 at 4; 325 Case, DE 32]. But those assertions have been too vague for the Court to credit (for instance, he has never identified a third address in Indiana from around this time period), and, in any event, they are inconsistent with his December 13, 2017 testimony. In short, Gallagher's statements about the "Notice" are "so internally inconsistent … that a reasonable factfinder would not credit" them. *In re Chavin*, 150 F.3d at 728.

March 13, 2015 from a computer repair store located at 2645 Elston Avenue, Chicago, Illinois, a location 41 miles away from the Griffith address. And while the invoice lists the Griffith address as Gallagher's "shipping address," the notes in the invoice indicate that the unit was being "pick[ed] up," not shipped. Gallagher also submitted a sales receipt from a T-Mobile store dated April 6, 2015. The receipt has Gallagher's name on it, but does not show any customer address. Moreover, the receipt indicates that purchases were made from a retail T-Mobile store located in Aurora, Illinois. Gallagher also submitted a letter sent to him by an Illinois attorney at the Griffith house. But the attorney states in the letter that he had sent previous correspondence to Gallagher by certified mail addressed to the same address, which had been returned to the attorney's office as undeliverable.

Finally, Gallagher submitted a number of court documents from lawsuits in which he is or was a party, dated between March and September 2015 and mailed to him at the Griffith address. Gallagher has filed many lawsuits beyond just those reflected in the documents he submitted as evidence of his domicile. A search in the federal PACER system resulted in 22 lawsuits filed by either "Kevin Gallagher" or "Robert Gallagher."[52] All of the events underlying these lawsuits appear to have happened to Gallagher while he was in Illinois, not Indiana. And with the exception of these two proceedings and one other filed in 2008, Gallagher himself chose to file his lawsuits in federal court in Illinois, not Indiana. From 1994 through 1998, Gallagher filed lawsuits in Illinois under the name "Kevin Gallagher" in which he listed his address as a post office box in Elk Grove

---

[52] *See* attached Appendix A. The Court finds that "Kevin Gallagher" and "Robert Gallagher" are one and the same person based on Gallagher's testimony at the December 13, 2017 hearing that "Kevin" is his middle name [Tr. Dec. 13, 2017 at 6:15-16 (410 Case, DE 122)], and Pajevic's testimony that Gallagher uses both names [*id.* at 5:22-23]. *See also* [325 Case, DE 12 at 2-4 (Order of Protection, naming "Robert K. Gallagher, a/k/a Kevin Gallagher"); *id.* at 10 (Forcible Entry and Detainer Order, naming "Robert Kevin Gallagher")].

Village, Illinois.[53] A number  of these lawsuits were dismissed for lack of jurisdiction, *see* note 49, *supra*, with at least one court expressly stating that "both the plaintiff and the defendant are currently citizens of Illinois." *Gallagher v. City of Naperville*, #1:97-cv-2015, *supra* note 49, Dkt. # 6. After that, between 2002 and 2008, Gallagher filed lawsuits in Illinois under the name "Kevin Gallagher," but used the Dyer, Indiana address rather than the Elk Grove Village, Illinois address.[54] Starting in about 2013, Gallagher began filing lawsuits under the name "Robert Gallagher." With the exception of the present two lawsuits, these cases were filed in Illinois. And while Gallagher listed his address for most of the cases in this time period as the Dyer house,[55] he also listed the Romeoville, Illinois house where Pajevic lived as his "mailing address" for at least two of them.[56]

Even jurisdictional evidence submitted by Gallagher *prior to* the jurisdictional hearing is mostly suggestive of a physical presence in Illinois rather than in Indiana, although it is not surprising that suggestion was not noted at the time, requiring a retrospective review of the record as a whole for it to become apparent. For instance, in the 410 Case, Gallagher's affidavit regarding

---

[53] *See, e.g., Gallagher v. City of Rolling Meadows, Ill.*, No. 1:97-cv-2087 (N.D. Ill., filed Apr. 3, 1997); *Gallagher v. City of Naperville*, No. 1:97-cv-5274 (N.D. Ill., filed Aug. 6, 1997); *Gallagher v. City of Rolling Meadows*, No. 1:97-cv-8876 (N.D. Ill., filed Dec. 23, 1997).

[54] *See, e.g., Gallagher v. Village of So. Barrington*, No. 1:03-cv-1651 (N.D. Ill., filed Apr. 2, 2003) (Dkt. # 4); *Gallagher v. Cir. Ct. of the Twelfth Jud. Cir. of Will Cnty., Ill.*, No. 1:06-cv-2214 (filed Apr. 26, 2006) (Dkt. # 6); *Gallagher v. City of Highland Park*, No. 1:07-cv-4196 (N.D. Ill., filed Sept. 13, 2007) (Dkt. # 3); *Gallagher v. Office of Pub. Defender of DuPage Cnty.*, note 43, *supra* (Dkt. # 3); *Gallagher v. Ill. State Police Dept.,* note 41, *supra* (Dkt. # 3).

[55] *See, e.g., Gallagher v. Cunningham*, No. 1:14-cv-3801 (N.D. Ill., filed May 22, 2014) (Dkt. # 3); *Gallagher v. Dursun*, No. 1:14-cv-3803 (N.D. Ill., filed May 22, 2014) (Dkt. # 3). Recall that Gallagher testified at the jurisdictional hearing that he moved from the Dyer house to the Griffith house in 1988.

[56] *See Gallagher v. Dursun*, note 42, *supra* (Dkt. # 3); *Gallagher v. O'Connor*, No. 1:14-cv-7859 (N.D. Ill., filed Oct. 8, 2014) (Dkt. # 3).

the amount in controversy was notarized by an Illinois notary public,[57] and the attached drug store receipt was from a Walgreens located in Lemont, Illinois, approximately 42 miles from Dyer, Indiana. *See* [410 Case, DE 37 at 4; DE 37-1 at 1]. In the 325 Case, Gallagher submitted his Indiana driver's record, which showed two traffic citations, both of which were received while driving in Illinois (one in 2012 and the other in 2014). [DE 35 at 5]. And the payment mailing address on the 2018 ComEd bill Gallagher submitted in support of one of his supplemental jurisdictional statements is in Carol Stream, Illinois. [DE 22 at 3]. Interestingly, the Court tried to determine if Commonwealth Edison, which is an Illinois electric company, provides electricity to the State of Indiana, and it appears that the answer is no.[58] Therefore, the electrical services provided under the 2018 utility bill were likely located in Illinois.[59] And a motion to continue a hearing filed by

---

[57] Although Gallagher has used an Indiana notary on occasion, in retrospect it appears odd that he used an Illinois notary on so many affidavits if he in fact was living in Indiana as he claims. *See, e.g.,* [325 Case, DE 8, DE 25, DE 37-4; 410 Case, DE 11, DE 26].

[58] *See https://www.in.gov/oucc/electric/utility-website-links/* (last visited Sept. 29, 2023) (State of Indiana website listing electrical companies that provide service in the state); *see also https://www.exeloncorp.com/companies/comed#:~:text=ComEd%27s%20service%20territory% 20comprises%20the,south%20(roughly%20Interstate%2080)* (last visited Sept. 29, 2023) (website of ComEd's parent company, which states that ComEd provides electrical services in the State of Illinois extending east as far as the Indiana border).

[59] That assumption is further supported by a complaint Gallagher filed in the Northern District of Illinois, *Robert Gallagher v. Clemens*, No. 16-cv-8884 (N.D. Ill., filed Sept. 13, 2016). The complaint alleges that Gallagher entered into a verbal contract three years earlier (2013) with the defendant for rental of a garage located at 601 Ridgelawn Trail, Batavia, Illinois, and that one year earlier (2015, the year he was evicted from Pajevic's house), the agreement was modified to include internet and cable. The complaint further alleges that, at the beginning of the rental agreement, Gallagher installed a gas meter and offered to install an electric meter, and that the garage had electricity, which the defendant had improperly turned off. The complaint was dismissed on December 11, 2017 after Gallagher failed to pay the filing fee, and Gallagher made no attempt to have it reinstated. *See id.*, Dkt. # 7. The ComEd bill submitted by Gallagher in the 325 Case is dated July 24, 2018, so after the *Clemens* lawsuit was dismissed. These facts possibly suggests that the ComEd bill Gallagher submitted in this case as evidence of an Indiana domicile might have been for electric services to the Batavia garage. Furthermore, this evidence tends to

Gallagher in November 2017 cited his need to appear at another hearing before an Illinois state court, on a case involving a ticket Gallagher received in Lyons, Illinois on October 19, 2017 at 9:23 p.m. for having improper license plates on his car. [410 Case, DE 34 at 1, 3]. Presumably, Gallagher had an Illinois license plate on his car, as it is unlikely he would have been stopped by an Illinois law enforcement officer for having an improper Indiana license plate.

Based on the above, the Court concludes that more than likely Gallagher uses the Griffith address like a post office box, i.e., to receive mail. And courts have had "little trouble concluding that a post office box cannot establish a domicile or residence." *Gravdahl,* 2002 WL 398599, at *3 (citing *In re Urban*, No. 96 Civ. 8567, 1998 WL 9389, at *3 (S.D.N.Y. Jan. 13, 1998)); *see also In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010) ("we agree with the majority of district courts that a court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses"); *cf. Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007) (court rejects evidence of billing addresses as sufficient to prove domicile, on ground that it showed residence but not required intent). The same evidence suggests that Gallagher was actually physically present in Illinois notwithstanding the Indiana mailing address, in that it indicates activities or conduct happening in Illinois through at least 2018. There is very little to no evidence showing any conduct or activity in Indiana, such as traffic violations, storage unit rentals, or payment for electricity or other utility services in Indiana.

Throughout these proceedings, Gallagher has relied heavily on his Indiana driver's license as proof that he lives in Indiana. As the Court previously noted, however, a driver's license by itself does not necessarily prove domicile. *See* [410 Case, DE 116 (citing cases)]. In *Galva Foundry*

support Pajevic's testimony that, when he was not living with her at the Romeoville house, Gallagher lived in Illinois in rented garages.

47

*Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991), the Seventh Circuit held that the defendant was domiciled in Illinois, where he lived most of the year, even though he took out a Florida driver's license, registered to vote in Florida, and listed Florida as his permanent address on his income tax returns. The Seventh Circuit warned that it would be too easy for litigants who live in two states "to opt in or out of federal diversity jurisdiction" simply by manipulating such things as their voter registration or driver's license. To similar effect is *Gravdahl,* 2002 WL 398599, at *3, where the court held that the fact that the plaintiff "maintained some formal ties with Illinois, such as paying Illinois taxes, maintaining an Illinois driver's license, and keeping insurance accounts in Illinois, was insufficient to rebut the clear evidence that he intended to relocate to Florida."[60]

There is also evidence to suggest that Gallagher has, or had at one time, both an Indiana driver's license and an Illinois driver's license. In a 2008 case filed in this district, *Gallagher v. Weber,* note 40, *supra,* Gallagher sued the Indiana Bureau of Motor Vehicles for revoking his Indiana driver's license apparently after learning that he also had an Illinois driver's license under the name "Kevin Gallagher."[61] Gallagher alleged in the lawsuit that "Kevin Gallagher" was his

---

[60] *See also Brown v. Scalise,* No. 3:20-CV-680- RLM-MGG, 2021 WL 4453717 at *1-2 (N.D. Ind. Sept. 29, 2021) (despite defendant's driver's license, voting registration, and affidavit claiming Indiana residency, "the weight of the evidence [did not] support [his] statements" claiming Indiana domicile); *Hill-Jackson v. FAF, Inc.*, 808 F. Supp. 2d 1083, 1087–88 (S.D. Ind. 2011) ("Merely visiting family, having a long distance relationship, and failing to update a driver's license are not enough to establish as a matter of law that" the plaintiff retained his domicile of origin); *Brown v. Mut. of N.Y. Life Ins. Co.*, 213 F. Supp. 2d 667, 671 n.3 (S.D. Miss. 2002) (court finds the plaintiff's Tennessee driver's license insignificant, noting that the plaintiff testified that, when she renewed her Tennessee license, she used the address of her aunt, even though there was nothing to indicate she ever stayed with her aunt during that time frame); *cf. ABTech, Inc. v. Want*, 534 F. Supp. 973, 981 (N.D. Ind. 2021) (finding Indiana driver's license entitled to less weight than contrary evidence of domicile because the license listed a residential address that appeared to be out of date).

[61] This might explain why the Illinois state court's order of protection made note of Gallagher having an Illinois driver's license.

brother (*id.*, Dkt. # 1, ¶ 25), but that allegation is contrary to his testimony in these cases that "Kevin" is his middle name, and the fact that the only brothers who have been mentioned in these proceedings are named Dennis and Pat. In addition, the *Weber* complaint alleges that Gallagher's "brother Kevin" is "a Human Rights Defender working on behalf of the United Nations," which is a claim Gallagher has repeatedly made here and in other cases about himself.[62] Significantly, in denying Gallagher's in forma pauperis petition, Judge Van Bokkelen made note of an Illinois lawsuit filed under the name "Kevin Gallagher," who, like the plaintiff Robert Gallagher, stated that he lived at 1450 Joliet Road, Dyer, Indiana, and whose signature "bears a remarkably similar signature to the one on Robert Gallagher's in forma pauperis petition in this case." [*Id.,* Dkt. # 4 at 2]. Judge Van Bokkelen also made note of the in forma pauperis petitions in several other Illinois cases filed by "Kevin Gallagher," concluding that these filings created "extensive confusion as to [the plaintiff Robert Gallagher's] living arrangement and financial situation." [*Id.*]. Gallagher did not pursue the case after Judge Van Bokkelen's order was entered.

Finally, the Court finds no apparent reason to question Pajevic's credibility on the matters of Gallagher's residence and domicile when her testimony is supported by the documents she has submitted in these proceedings. There are many reasons, on the other hand, for the Court to question Gallagher's credibility. *See Ner Tamid Congregation of N. Town v. Krivoruchko*, 620 F. Supp. 2d 924, 941-42 (N.D. Ill. 2009) (noting "equivocations, inconsistencies, and contradictions" in the defendant's testimony about where he was domiciled). Aside from the fact that the documentary evidence he has submitted does not support his testimony, Gallagher has

---

[62] While the supposed brother "Kevin Gallagher" allegedly had the Illinois driver's license, another lawsuit filed in 2003 in Illinois under the name "Kevin Gallagher" asserts that the "Kevin Gallagher" in question lives in Indiana. *See Gallagher v. Village of So. Barrington*, note 54, *supra*, Dkt. # 1.

made numerous assertions during these proceedings without providing any supporting evidence, some of which are directly contradicted by actual evidence in the record.[63] The Court also notes that Gallagher has a long history of making unsupported and highly doubtful allegations about working for the United Nations.[64] And he has submitted documents that he represents to be actual filings in proceedings before the United Nations in which the named defendants include the various judges who have ruled against him. Just as he submitted a supposed United Nations filing naming the Illinois state court judge as proof of his arguments in this case, Gallagher sent a similar document to the presiding district court judge in a case he brought in the Northern District of Illinois. That judge placed the document on the record and sent copies to the Office of the United States Attorney and the Judicial Council of the Seventh Circuit. *See Gallagher v. O'Connor*, note 56, *supra,* Dkt # 62.

In sum, the Court finds that Gallagher's testimony during the jurisdictional hearing that he has lived continually at either the Dyer house or the Griffith house since the 1980's, and never lived at Pajevic's house in Illinois, is not credible. Instead, the Court credits Pajevic's testimony

---

[63] For example, without any proof and contrary to the documentary evidence in the case, Gallagher has asserted that Pajevic's certificate of service for the Illinois domestic relations court proceeding "was declared void by the court," and that Pajevic does not "have any court orders of eviction to support [her] statement" that Gallagher was evicted from her home. [410 Case, DE 44 at 4, 7].

[64] For instance, in this case, Gallagher has said, among other things, that the Illinois state court judge who issued the order of protection against him "was disqualified due to an international counter complaint," and that the "General Assembly of the United Nations took action while that litigation continued and placed a travel ban against the offending [J]udge Galvin for ill treatment to Human Rights Defender [i.e., Gallagher] who is working on behalf of the United Nations." [410 Case, DE 44 at 13]. He called Pajevic's statement that Judge Pallmeyer dismissed the Illinois federal lawsuit (*see* note 21, *supra*) "deliberately misleading" supposedly because "that case is actually currently active in the General Assembly of the United Nations." [*Id.*]. And he warned this Court that if it considered Judge Pallmeyer's dismissal order in determining any matter in this case, this Court would be in "conflict as an additional defendant with the General Assembly of the United Nations … as continuing to cause ill treatment of a Human Rights Defender." [*Id.*].

that Gallagher lived with her full-time from 2005 through February 2015, just as Gallagher himself stated during the settlement conference. Further, there is no evidence to support any argument (which Gallagher has not made, since he denies ever living in Illinois) that, after his eviction from Pajevic's house in February 2015, he moved in with his brother in Griffith. The only evidence offered shows that Gallagher has used and is currently using the Griffith address as his mailing address. That evidence is insufficient to show Gallagher was ever physically present at the Griffith house, let alone resided there, for the reasons discussed already. Gallagher's strongest piece of evidence—his Indiana driver's license—is itself called into question by Gallagher's dealings with the Indiana Bureau of Motor Vehicles as set forth in the 2008 lawsuit before Judge Van Bokkelen, and in any event is outweighed by all the other evidence in these cases pointing to the center of gravity of Gallagher's life being in Illinois from at least 2004 (and likely long before that, *see* attached Appendix A) through at least June 17, 2015, the date on which the Illinois state court issued the final order of protection, and likely through 2018 when he filed his most recent lawsuit against an Illinois employer.[65]

### 2.    DID GALLAGHER INTEND TO REMAIN IN ILLINOIS INDEFINITELY

Given the above findings, the question becomes whether Gallagher's long-time residence in Illinois effected a change in his domicile of origin. That question turns on Gallagher's intent, i.e., at the time of or some point after Gallagher's move to Illinois, did he form the intention to remain in Illinois indefinitely? *See Perry*, 16 F.3d at 140 ("It is not enough to simply establish physical presence, but in order to turn residence in fact into a domicile in law the party must show, by some objective act, his intention to maintain the residency indefinitely.").

---

[65] *See Robert Gallagher v. Case New Holland,* 1:18-cv-7556 (N.D. Ill., filed Nov. 14, 2018).

It is important to note that "[p]roof of intent to remain permanently is not the test. 'If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile.'" *Krasnov v. Dinan,* 465 F.2d 1298, 1300–01 (3d Cir. 1972). In addition, Gallagher's statements to the effect that he is domiciled in Indiana or has always intended to remain domiciled there "are given little weight when they contradict the facts." *Gravdahl,* 2002 WL 398599, at *1. "[I]ntent is a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct." *Sadat,* 615 F.2d at 1181 (court gives little weight to fact that "the plaintiff disclaimed any intention of settling in Cairo" because those statements "conflict[ed] with the facts"). Objective factors courts look to in determining an individual's intent include "current residence, voting registration, driver's license and automobile registration, location of personal property, place of employment or business, membership in clubs or other associations, family ties and payment of taxes." *Gravdahl,* 2002 WL 398599, at *1. Courts also consider "whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) ... and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc." *Nat'l Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991). "No single factor is determinative, and courts must consider the 'totality of the evidence.'" *Levy v. Suissa*, No. 16-CV-2532-EK-ARL, 2021 WL 2402240, at *3 (E.D.N.Y. Mar. 19, 2021) (internal quotation marks and citation omitted), *report and recommendation adopted*, No. 16-CV-2532-EK-(ARL), 2021 WL 2401011 (E.D.N.Y. June 11, 2021).

There is no evidence to show where Gallagher is registered to vote; where his car is registered; the location of any of his personal property (other than car parts he admits are stored in Illinois); the location of his physician, lawyer, accountant, dentist, or stockbroker (other than two lawyers he has mentioned during these proceedings, both of whom are in Illinois); the location of

any club or association memberships; the state where he is or ever was employed;[66] or the state to which he has paid taxes. The evidence is limited to Gallagher's family ties in Indiana and his long-time residence in Illinois. The fact that Gallagher resided in Illinois with Pajevic from 2005 through mid-February 2015 is strong evidence of a change of domicile. *See Seaboard Fin. Co. v. Davis*, 276 F. Supp. 507, 509–11 (N.D. Ill. 1967) ("[A] change of residence is often considered prima facie evidence of a change of domicile, and unless the person can show an intention to return to his former residence at a relatively definite future time, may be sufficient to ascribe a change of domicile."); *see also Levy,* 2021 WL 2402240, at *5 ("Although residence is not equivalent to domicile, it is, nonetheless, highly relevant to the issue of domicile. Indeed, a party's residence at [the time the case is filed] is prima facie evidence of his domicile." (internal quotation marks and citations omitted)).

While maintaining a residence in Indiana is not an absolute requirement to maintaining a domicile there, *see Salem*, 803 F. App'x at 931, the Court finds that Gallagher's long-time residence in Illinois combined with the lack of any fixed residence in Indiana indicate that he changed his domicile to Illinois. *See Levy,* 2021 WL 2402240, at *5 (relying heavily on fact that the plaintiff no longer had a physical presence in Florida in finding that he changed his domicile when he moved to Belize, stating "[f]undamental to the concept of domicile is maintaining a physical presence in the state"); *see also Borderud v. Riverside Motorcars, LLC*, No. 3:18-cv-1291 (VAB), 2020 WL 2494760, * 15-16 (D. Conn. May 13, 2020) (holding that because the plaintiff

---

[66] Although Gallagher has suggested at times that he is self-employed, he also has indicated that he performs that work either at a storage facility in Batavia, Illinois, or else traveling out of town. An in forma pauperis petition he filed in *Gallagher v. A-Express Towing*, 1:02-cv-0321 (N.D. Ill., filed Mar. 6, 2002) (Dkt. #5), indicates that he was at one time self-employed with an address in Elk Grove Village, Illinois. And his most recent Illinois lawsuits is against a former employer, located in Burr Ridge, Illinois. *See Robert Gallagher v. Case New Holland,* note 65, *supra*.

lived in Massachusetts and no longer had a physical presence in Connecticut, he gave up his previous Connecticut domicile even though his bank, driver's license, and voter registration were still in that state); *Gravdahl*, 2002 WL 398599, at *2-3 (finding that the plaintiff changed his domicile based on the lack of a residence for the past four years in Illinois during which time he had been living on a boat in Florida, even though he "maintains some formal ties with Illinois, such as paying Illinois taxes and maintaining an Illinois driver's license" (citing *Duff v. Beaty*, 804 F. Supp. 332, 336 (N.D. Ga. 1992) (finding that the defendant changed his domicile to Tennessee when he moved out of his Georgia home, bought a boat to live in, and docked the boat in Tennessee, even though he did not change his car registration or get a new driver's license))).

There is also the fact that when Gallagher lived in Illinois, he was in a long-term relationship with Pajevic, which lasted ten years. *See United States v. Scott*, 472 F. Supp. 1073, 1079 (N.D. Ill. 1979) ("Although the Court will look at the totality of the evidence, the residence of a spouse … is a highly persuasive indication of the place intended as a permanent home."). While Gallagher has family ties in Indiana and may have always intended to return to that state someday, a "floating intention of returning to [a state where the person previously lived]" is not sufficient to maintain that state as the person's domicile. *Gilbert v. David*, 235 U.S. 561, 569 (1915). Instead, the Court finds that Gallagher "actually removed" to Illinois "with an intention of remaining there for an indefinite time," and therefore that he changed his domicile from Indiana to Illinois.

### 3.   DID GALLAGHER EVER CHANGE HIS DOMICILE BACK TO INDIANA?

Although it is mostly answered already by the preceding discussion, the Court, having found Gallagher changed his domicile to Illinois when he was living with Pajevic, will separately consider whether he ever changed it back to Indiana after he was evicted but before either August

2015, when the Defamation Complaint was filed, or November 5, 2015, when the Tortious Infection Complaint was filed. It was Gallagher's burden to prove that after he moved out of Pajevic's house, he established a new domicile back in Indiana. To do that, Gallagher would have to show that he was physically present in Indiana in that time period with the intent to remain indefinitely. *See Sadat,* 615 F.2d at 1188 (holding that the plaintiff was not domiciled in Pennsylvania because he sold his house and never returned there after moving overseas). Gallagher's litigation history in the Northern District of Illinois in the 2016-2018 time period (*see* attached Appendix A)—both the filing of those cases and their underlying facts, including a lawsuit against the landlord for the Batavia, Illinois garage he admittedly rented (*Robert Gallagher v. Clemens*, note 59, *supra*) and a lawsuit against an employer located in Burr Ridge, Illinois (*Robert Gallagher v. Case New Holland*, note 65, *supra*)—suggest a continuing presence in Illinois. And for the reasons already discussed, Gallagher has not shown that he currently resides in Indiana or has any physical presence there other than to pick up mail from his brother's house.

To be clear, the Court is not simply taking Pajevic's word over Gallagher's about where Gallagher lived from around 2005 through the filing of these lawsuits. The Court gave Gallagher numerous opportunities to provide evidence to support his testimony that he lived with his brother in Griffith this entire time period. Any documents he has submitted show at most that he used the Griffith address as his mailing address. Many of those documents indicate that he was present in Illinois when he provided a third party with the Griffith mailing address. Since it is Gallagher's burden to establish that subject-matter jurisdiction is proper, and, after weighing the evidence provided, the undersigned concludes Gallagher has failed to provide the Court with sufficient support for his contention that he was domiciled in Indiana at the time the complaints were filed. The evidence shows that Gallagher moved from Indiana to Illinois, where he formed the intent to

remain in that state, thus relinquishing his old domicile in Indiana and acquiring a new domicile in Illinois. Gallagher has presented no evidence to meet his burden of showing otherwise, nor has he shown that he ever changed his domicile back to Indiana after establishing an Illinois domicile but before filing the present lawsuits.[67]

## II.

The foregoing findings have led this Court to consider whether any filing restrictions should be imposed on Gallagher given the inconsistencies and false statements to the Court over a period of more than seven years, which required a great deal of work to uncover. Consideration of that question is particularly important in this case, because a dismissal for lack of subject-matter jurisdiction is without prejudice, *see Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004), and it is possible the statute of limitations would not bar Gallagher from refiling his claims against Pajevic elsewhere. This means that, despite indications as discussed herein that Gallagher's claims have no merit and that he may have given false testimony under oath, fabricated evidence, and used the judicial system to harass and exact revenge against an ex-girlfriend, Gallagher will be left after this Court's jurisdictional ruling in essentially no worse position than if he had not done those things. "This sort of heads I win, tails you lose approach is unacceptable in all contexts." *Mullins v. Hallmark Data Sys., LLC*, 511 F. Supp. 2d 928, 940–41 (N.D. Ill. 2007) (dismissing complaint with prejudice as sanction for intentionally lying on an IFP form). It is a particularly

---

[67] Shortly after the evidentiary hearing in this case was held, Gallagher filed a document titled "A[d]visory Memo" in which he asked the Court to refrain from ruling on the jurisdictional question to allow him time to obtain additional documents to prove his Indiana domicile, which he says he could not get before the hearing. *See* [325 Case, DE 103; 410 Case, DE 119]. The "A[d]visory Memo" was not filed as a motion, so no order has been entered responding to the request. More than six months have passed since Gallagher filed the "A[d]visory Memo," however, which is sufficient time for him to have made further evidentiary submissions if he intended to do so. Accordingly, the request in the "A[d]visory Memo" is denied as moot.

difficult outcome for Pajevic, as Gallagher has given every indication that he will in fact try to re-file his claims, saying as much in reference to the Greek mythological Lernaean Hydra when he argued that the Court should set a new settlement date rather than dismiss his claims as a sanction for failure to appear, thereby implying he would file not just two but multiple lawsuits against Pajevic in place of the dismissed ones.[68]

Federal Rule of Civil Procedure 1 provides that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As the 1993 amendment to the rule notes, Rule 1 "recognize[s] the affirmative duty of the court to exercise the authority conferred by these rules to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay." Fed. R. Civ. P. 1, Advisory Comm. Notes, 1993 Amendment. Gallagher's pro se status does not give him "license to harass others, clog the judicial machinery ..., and abuse already overloaded court dockets." *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 315 (5th Cir. 2020). And federal courts have a clear obligation to exercise their authority to protect other litigants from such behavior. *Chatmon v. Churchill Trucking Co.*, 467 F. Supp. 79 (D. Mo. 1979). Even more so if the other litigants are also pro se, as Pajevic was for five out of the seven years this litigation has been pending. *See Theriault v. Silber,* 574 F.2d 197 (5th Cir. 1978) (while courts allow

---

[68] Gallagher's statements in this regard come close to threatening to use the judicial system solely to harass and exact revenge, which would clearly be improper. That he views the judicial system as a means to that end is suggested by a number of statements in the record. *See, e.g.,* [410 Case, DE 44 at 15 (stating that he countersued his ex-wife because she filed a protection order against him and that as a result the ex-wife "lost the house, the car, along with all of the child support"); *id.* (stating that he also sued an ex-girlfriend over her "attempt at abusing the legal system" and claiming that she, like his ex-wife, "lost [the] battle" against him); *id.* at 15-16 (stating that he successfully sued police officers for stopping him under suspicion of driving while drinking); *id.* at 16-18 (stating that he successfully threatened the staff at a mental ward of a hospital that he would sue, causing the hospital to back down).

considerable license to a pro se litigant, an opposing pro se litigant "has rights too, including the right to be free from harassing, abusive, and meritless litigation").

Gallagher has a long history of filing pro se complaints frequently without payment of filing fees. *See* attached Appendix A. "Federal courts possess the inherent power and constitutional obligation to prevent abuse of the judicial process by a litigant who engages in a pattern of frivolous litigation. When a litigant persists in such conduct courts have exercised this power by imposing regulatory injunctions designed to prohibit the filing of duplicative and frivolous actions." *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993) (citations omitted). The Court will not go so far as to impose any regulatory injunctions here.[69] However, Gallagher should "think twice" before bringing any further complaints against Pajevic, as he has now been forewarned (in the Background section) that his claims may lack a good faith basis in fact and/or may be legally frivolous. Gallagher should keep in mind that, at least in federal court, sanctions "may be imposed on any suit that is frivolous," regardless of whether the plaintiff is pro se." *Conway v. Colonial Penn Life Ins. Co.*, No. 3:22-CV-50230, 2023 WL 4825417, at *3 (N.D. Ill. July 27, 2023) (citing *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990)). The Court is concerned that Gallagher may have attempted to fabricate evidence by submitting papers he created but represented to the Court were genuine court orders or related documents.[70] While these documents

---

[69] Courts generally do not issue an injunction restricting a litigants access to the courts without giving the plaintiff a prior warning that such an injunction would be issued if he continues to file frivolous actions. *Valle v. YMCA of Greater N.Y.*, No. 06-CV-2083(NGG), 2007 WL 2126269, at *2 (E.D.N.Y. July 24, 2007). This Opinion and Order serves as Gallagher's prior warning.

[70] The Court has in mind the two "Notices of Falsification of Service," the several "Affidavits" or "Notices" of a non-existent "Wage Deduction Order," and a document Gallagher submitted to the Court claiming that it is "a color copy of the proof of service for the international [United Nations] case report with an official file stamp of the Registry for the Office of the High Commissioner of Human Rights in the United Nations (OHCHR),… [showing] delivery to the United States ambassador to the United Nations," [410 Case, DE 44 at 13, DE 45 at 3].

did not necessarily prejudice Pajevic in this matter, the Court makes note of them so that Pajevic will have a written record of this Court's concerns (along with the rest of its findings in this Opinion and Order), which she can then present to the court or presiding officer if Gallagher were to initiate any further proceedings against her.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff Robert Gallagher was domiciled in Illinois at the time these lawsuits were filed, and that Defendant Nada Pajevic also was domiciled in Illinois at that time. Accordingly, because the citizenships of the parties when the suits were filed were not diverse, the Court finds that it does not have subject-matter jurisdiction over Cause No. 15-cv-325 or Cause No. 15-cv-410, and that those cases shall be and are, **HEREBY DISMISSED WITHOUT PREJUDICE**.

The Clerk of Court is **DIRECTED** to enter this Opinion and Order under seal, with access restricted to the parties and their attorneys only for a minimum of thirty days. The parties shall have until that thirty days expires to file any request for redactions and/or substitution of any party's names with initials. If neither party files any request for redactions or substitution within the thirty-day period, the Clerk **SHALL UNSEAL** this Opinion and Order without further order of the Court. If either party files a motion regarding the seal, the Court will resolve any redaction or pseudonym requests in that motion, and then direct that a Redacted Opinion and Order be entered without any restrictions.

So ORDERED this 31st day of January, 2024.

<u>s/ Joshua P. Kolar</u>
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT

Cc: Pro Se Plaintiff

## APPENDIX A

### *Northern District of Illinois*

**1991—1997**

(All filed under the name "Kevin Gallagher," using address of
P.O. Box 92254, Elk Grove Village, Illinois, 60009)

*Gallagher v. City of Rollings Meadows,* 1:94-cv-5400, filed Oct. 4, 1994.

*Gallagher v. Howard, et al.,* 1:95-cv-2807, filed May 17, 1995.

*Gallagher v. City of Naperville*, 1:97-cv-2015, filed Apr. 1, 1997.

*Gallagher v. City of Rolling Meadows, IL*, 1:97-cv-2087, filed Apr. 3, 1997.

*Gallagher v. City of Naperville, et al.*, 1:97-cv-2018, filed July 24, 1997.

*Gallagher v. City of Naperville*, 1:97-cv-5274, filed Aug. 6, 1997.

*Gallagher v. City of Rolling Meadows*, 1:97-cv-8876, filed Dec. 23, 1997.

**2002-2008**

(All filed under the name "Kevin Gallagher," using address of
1450 US 30, Dyer, Indiana, 46311)

*Gallagher v. A-Express Towing*, 1:02-cv-321, filed Mar. 6, 2002.

*Gallagher v. Village of So. Barrington, et al.*, 1:03-cv-1651,
 filed Apr. 2, 2003.

*Gallagher v. Cir. Ct. of the Twelfth Jud. Cir. of Will Cnty., Ill.*, 1:06-2214, filed Apr. 26, 2006.

*Gallagher v. City of Highland Park, et al.,* 1:07-cv-4196, filed Sept. 13, 2007.

*Gallagher v. Office of the Pub. Defender of DuPage Cnty, et al*., 1:08-cv-1424, filed Mar. 18, 2008.

*Gallagher v. Ill. State Police, et al.,* 1:08-cv-5898, filed Dec. 16, 2008.

**2013-2018**

(All filed under name "Robert Gallagher," using address of 613 Glenhurst Court, Romeoville, Illinois 60446, and/or 1450 Joliet Street, Dyer, Indiana, with change of address filed on March 9, 2015, giving "new" address of 2001 E. Main Street, Griffith, Indiana, 46319)

*Gallagher v. Dursun*, 1:13-cv-7891, filed Nov. 4, 2013.

*Gallagher v. Cunningham, et al.*, 1:14-cv-3801, filed May 22, 2014.

*Gallagher v. Dursun, et al.,* 1:14-cv-3803, filed May 22, 2014.

*Gallagher v. O'Connor, et al.*, 1:14-cv-7859, filed Oct. 8, 2014.

*Gallagher v. Pajevic, et al.*, 1:15-cv-6642, filed July 29, 2015.

*Gallagher v. Clemens*, 1:16-cv-8884, filed Sept. 13, 2016.

*Gallagher v. Gentile, et al.*, 1:18-cv-6413, filed Sept. 20, 2018.

*Gallagher v. Case New Holland, Inc., et al.*, 1:18-cv-7556, filed Nov. 14, 2018.

### *Northern District of Indiana*

(All filed under name "Robert Gallagher," with 2008 case using address of 1450 Joliet Street, Dyer, Indiana, and 2015 cases using address of 2001 E. Main Street, Griffith, Indiana, 46319)

*Gallagher v. Weber, et al.,* 2:08-cv-136, filed May 1, 2008.

*Gallagher v. Pajevic*, 2:15-cv-325, filed Aug. 31, 2015.

*Gallagher v. Pajevic*, 2:15-cv-410, filed Nov. 5, 2015.